**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:16-cv-24939-WILLIAMS/TORRES

ADAM DRISIN,

Plaintiff,

v.

THE FLORIDA INTERNATIONAL
UNIVERSITY BOARD OF TRUSTEES, *et al*.

Defendants.

_______________________________________________/

**REPORT AND RECOMMENDATION**
**ON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Florida International University Board of Trustees ("FIU"), Mark B. Rosenberg ("Rosenberg"), Shirlyon McWhorter ("McWhorter"), Kenneth Furton ("Furton"), Brian Schriner ("Schriner"), Jaffus Hardrick ("Hardrick"), Robert Jaross ("Jaross"), and Larry Lunsford ("Lunsford") (collectively, "Defendants") motion to dismiss ("Motion") [D.E. 14] against Adam Drisin ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 2, 2017, Plaintiff responded to Defendants' Motion [D.E. 16] and Defendants timely replied on February 9, 2017. [D.E. 17]. Therefore, this Motion is now ripe for disposition. After careful consideration of the Motion, response, reply,

relevant authority, and for the reasons discussed below, Defendants' Motion should be **GRANTED in part** and **DENIED in part**.[1]

## *I. BACKGROUND*

Plaintiff alleges that he was formerly employed by FIU as a professor and associate dean of FIU's College of Architecture and the Arts. Rosenberg, McWhorter, Furton, Schriner, Hardrick, Jaross, and Lunsford (the "Individual Defendants") are alleged to be FIU employees in various capacities. Specifically, Plaintiff alleges that "[a]t all times material, the individual Defendants acted under color of state law and in furtherance and fulfillment of their official duties as employees or agents of FIU, and their conduct constituted official action by FIU." [D.E. 1]. Plaintiff alleges that he founded and taught at an FIU-sponsored, study-abroad program in Genoa, Italy and that a female student, Andrew Rivera ("Rivera"), was a graduate student who participated in that program. On the evening of December 12, 2014, several students and faculty members – including Plaintiff and Rivera – had dinner and drinks. Thereafter, three female students – including Rivera – accompanied Plaintiff to his apartment. They gathered in Plaintiff's bedroom, where they talked and eventually fell asleep. A sexual incident allegedly transpired between Rivera and Plaintiff, but Plaintiff purportedly has no personal knowledge of whether he and Rivera had sexual intercourse.

The alleged incident resulted in Rivera filing a sexual misconduct complaint with FIU against Plaintiff. FIU conducted a months-long investigation into

---

[1] On June 13, 2017, the Honorable Kathleen Williams referred Defendants' Motion to the undersigned Magistrate Judge for disposition. [D.E. 24].

Rivera's complaint. The investigation culminated in a final investigative report that summarized FIU's investigation and charged Plaintiff with sexual misconduct. The report was finalized on July 8, 2016 and two days later, Plaintiff appealed those findings through FIU's internal procedures. The appeal was denied on July 30, 2015.

Also on July 10, 2015, Plaintiff filed his own complaint of sexual misconduct against Rivera. FIU investigated Plaintiff's complaint and concluded, in a written report finalized on September 10, 2015, that his complaint was unfounded. On September 30, 2015, Plaintiff's retained counsel wrote to FIU to challenge those findings. On October 20, 2015, FIU responded to Plaintiff's letter and ratified the findings and conclusion in the September 10, 2015 investigative report.

FIU then began the formal process to terminate Plaintiff's employment with FIU. On August 15, 2015, Plaintiff was provided written notice that FIU intended to terminate his employment due to sexual misconduct. On September 11, 2015, FIU again wrote to Plaintiff and advised that, in accordance with the August 17, 2015 letter[2], his employment would be terminated effective September 14, 2015. Plaintiff alleges that the decision to terminate his employment was made at the sole direction of Rosenberg, FIU's president.

---

[2] In examining the sufficiency of a complaint, it is settled law that a court may consider "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citing FED. R. CIV. P. 10(C)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

On April 28, 2016, Rivera filed a civil lawsuit against Plaintiff in the United States District Court for the Southern District of Florida, alleging claims of sexual battery and negligent infliction of emotional distress that arose out of the events in Genoa, Italy. Approximately one week after the lawsuit was filed, on May 6, 2016, an article regarding the publicly-filed lawsuit was published by an FIU Student Media group on FIU's Student Media website. While not attaching a copy of the article to the Complaint, Plaintiff alleges that the article is a defamatory piece intended to harm his reputation.

On July 7, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") arising out of his termination. And on November 28, 2016, Plaintiff filed suit against Defendants based on the allegations presented here. [D.E. 1]. In their defense, Defendants contend that all of Plaintiff's claims lack merit because of: (1) Florida's statutory immunity, (2) the Eleventh Amendment's immunity, (3) qualified immunity, (4) statutory preemption, and (5) the failure to satisfy applicable pleading standards.

## *II. APPLICABLE PRINCIPLES AND LAW*

In ruling on Defendants' Motion, this Court takes the allegations in the complaint as true and construes the allegations "in the light most favorable to the plaintiffs." *Rivell v. Private Health Care Systems, Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)). "When considering a motion to dismiss, all facts set forth in [Plaintiff's] complaint 'are to be accepted as true and the court limits its consideration to the pleadings

and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). A motion to dismiss under Rule 12(b)(6) "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Factual content gives a claim facial plausibility. *Id.* "[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [the plaintiff]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

## *III. ANALYSIS*

### *A. <u>Title IX Claim (Count I) against FIU</u>*

Defendants' first argument[3] in support of its Motion is that Count I as alleged against FIU – a violation of Title IX – must be dismissed because the claim is preempted by Title VII. In Count I of the Complaint, Plaintiff alleges a claim of employment discrimination "on the basis of his gender" in violation of Title IX. [D.E. 1]. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. The statute "prohibits both sex discrimination and retaliation against an individual who complains about sex-based discrimination perpetrated by an educational institution receiving federal funds." *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 173–74 (2005) (citing *Torres v. Sch. Dist. of Manatee Cty., Fla.*, 2014 WL 4185364, at *4 (M.D. Fla. Aug. 22, 2014)). To enforce the provisions of Title IX, the statute provides for the termination of federal

[3] Defendants' Motion also argues that Plaintiff's Complaint against FIU must be dismissed because Plaintiff failed to satisfy the pre-suit notice requirements of Fla. Stat. § 768.28(6). The Court need not explore this issue in depth because Plaintiff filed suit under federal law and Fla. Stat. § 768.28(6) applies only to state-law tort claims. *See Schaeffer v. Sch. Bd. of Broward Cty., Fla.*, 69 F. Supp. 3d 1327, 1330 (S.D. Fla. 2014) ("Pursuant to this language, the notification requirement applies solely to state-law tort claims."); *see also Bifulco v. Patient Bus. & Fin. Servs., Inc.,* 997 So. 2d 1257, 1258 (Fla. 5th DCA 2009) *approved and remanded,* 39 So. 3d 1255 (Fla. 2010) ("The sole purpose for the enactment of section 768.28 was to waive sovereign immunity *for breaches of common law torts.*" (citing *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah,* 468 So. 2d 912, 917 (Fla. 1985) (emphasis added)). Therefore, Defendants' argument – as it relates to Fla. Stat. § 768.28(6) – lacks merit.

funding. *See* 20 U.S.C. § 1682; 34 C.F.R. § 106.71; *see also Dougherty Cty. School System v. Harris,* 622 F.2d 735, 736 (5th Cir. 1980) (noting that termination of funding is Title IX's "primary sanction"). Therefore, Title IX's prohibition of sex discrimination is part of a larger federal legislative scheme designed to protect individuals from employment discrimination. *Compare* 20 U.S.C. § 1681 *et seq*. (Title IX) *with* 42 U.S.C. § 2000e *et seq*. (Title VII) *and* 29 U.S.C. § 206(d) (Equal Pay Act).

As for the scope of Title IX, its plain language protects employees, teachers, and students at schools receiving federal funds:

> [Title IX's] broad directive that 'no person' may be discriminated against on the basis of gender appears, on its face, to include employees as well as students. Under that provision, employees, like other 'persons,' may not be 'excluded from participation in,' 'denied the benefits of,' or 'subjected to discrimination under' education programs receiving federal financial support.
> . . .
> Because [Title IX] neither expressly nor impliedly excludes employees from its reach, we should interpret the provision as covering and protecting these 'persons' unless other considerations counsel to the contrary. After all, Congress easily could have substituted 'student' or 'beneficiary' for the word 'person' if it had wished to restrict the scope of [Title IX].

*North Haven Board of Education v. Bell,* 456 U.S. 512, 520-21 (1982).

Similarly, Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion sex, or national origin." 42 U.S.C.A. § 2000e-2. "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate

treatment of men and women' in employment,' which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). Hence, the question before the Court is whether Plaintiff has a private right of action under Title IX for complaints of gender discrimination when Title VII also provides Plaintiff with an available remedy.

Defendants contend that all the conduct at issue in Plaintiff's Complaint occurred in his capacity as an employee of FIU. As such, Plaintiff's Title IX and Title VII claims are purportedly premised on the same 240 paragraphs of general factual allegations in the Complaint and that the law is clear that Plaintiff's claim is preempted by Title VII as a matter of law.

As support, Defendants rely on *Howard v. Bd. of Educ. of Sycamore Cmty. Unit Sch. Dist. No. 427*, 893 F. Supp. 808, 815 (N.D. Ill. 1995), where a former employee brought an action under both Title VII and Title IX against his former employer and alleged sex discrimination, sexual harassment, and retaliatory discharge. The court dismissed plaintiff's Title IX claim as preempted by Title VII on the basis that the latter "provides a comprehensive scheme for aggrieved individuals to enforce the prohibition against discrimination in employment." *Id.* at 815 (citing *Wedding v. University of Toledo,* 862 F. Supp. 201 (N.D. Ohio 1994)). The court further found that "by allowing a comparable cause of action under Title IX", it might impede the detailed and comprehensive provisions included under

Title VII. *Id.* at 815. Therefore, the court dismissed plaintiff's Title IX claim because it was precluded by Title VII.

Defendants note that neither the Supreme Court nor the Eleventh Circuit have addressed the specific question of whether Title VII preempts Title IX when employees seek redress for discrimination. Yet, Defendants contend that district courts within the Eleventh Circuit have consistently adopted the majority view that Title VII preempts claims under Title IX. *See, e.g,. Carvalho-Knighton v. Univ. of S. Fla. Bd. of Trs.*, 2015 WL 12938951, at *2 (M.D. Fla. Oct. 13, 2015) (declining to allow a proposed Title IX claim "because, to the extent that Title IX applies at all on these facts, it overlaps completely the related Title VII claim and would be preempted by it"); *Torres*, 2014 WL 4185364, at *6 (M.D. Fla. Aug. 22, 2014) (dismissing Title IX claim brought by teacher and "hold[ing] that Title VII preempts [the teacher's] Title IX claims"); *Schultz v. Bd. of Trustees of Univ. of W. Fla.,* 2007 WL 1490714, at *3 (N.D. Fla. May 21, 2007) ("[C]onsistent with the weight of authority, that the 'precisely drawn, detailed enforcement structure' and 'comprehensive remedial scheme' that is Title VII preempts the more general remedy under Title IX in this case."); *Hankinson v. Thomas County Sch. Dist.,* 2005 U.S. Dist. LEXIS 25576, at *6, 2005 WL 6802243 (M.D. Ga. Oct. 28, 2005) ("[T]his Court agrees with those courts that hold Title VII preempts employment discrimination claims for money damages brought under Title IX."); *Morris v. Wallace Cmty. College-Selma,* 125 F. Supp. 2d 1315, 1343 (S.D. Ala. 2001) ("In light of the weight of authority that a Title IX claim of employment discrimination may

not be maintained to the extent that Title VII provides a parallel remedy, and of the plaintiff's failure to provide any support for a contrary conclusion, the Court rules that the plaintiff's Title IX claim is precluded by Title VII"); *Blalock v. Dale County Bd. of Educ.,* 84 F. Supp. 2d 1291, 1298 (M.D. Ala. 1999) ("We hold that Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions"); *Gibson v. Hickman,* 2 F. Supp. 2d 1481, 1484 (M.D. Ga. 1998) ("This court agrees with those courts finding that Title VII preempts employment discrimination claims for money damages brought under Title IX"); *Hazel v. Sch. Bd. of Dade Cty., Fla.,* 7 F. Supp. 2d 1349, 1354 (S.D. Fla. 1998) (dismissing Title IX claims with prejudice and adopting "the line of cases that hold that Title VII is the exclusive remedy for employment discrimination claims on the basis of sex in federally funded educational institutions").

In response, Plaintiff agrees that neither the Supreme Court nor the Eleventh Circuit have addressed the question of whether Title VII preempts a Title IX action for damages. However, Plaintiff contends that among the courts that have addressed the question presented, opinions have been evenly divided among federal courts and – as recently as last year – many courts have decided this question in Plaintiff's favor. *See, e.g.*, *Winter v. Pennsylvania State Univ.*, 172 F. Supp. 3d 756, 773 (M.D. Pa. 2016) ("After reviewing these Supreme Court rulings and subsequent cases interpreting them, I conclude that Title VII does not preempt Plaintiff's Title IX employment discrimination claim."); *see also AB v. Rhinebeck*

*Cent. Sch. Dist.,* 224 F.R.D. 144, 153 (S.D.N.Y. 2004) ("[T]his Court finds that Title IX was intended by Congress to function as an additional safeguard against gender-based discrimination in the context of federally funded education programs; notwithstanding the possibility of other available remedies, including without limitation those available under Title VII."); *Bedard v. Roger Williams Univ.*, 989 F. Supp. 94, 97 (D.R.I. 1997) ("[T]his court agrees with those courts which predictively view the Supreme Court's 'next logical step' as being to recognize a private cause of action under Title IX for employment discrimination against a federally funded education program."); *Bowers v. Baylor Univ.*, 862 F. Supp. 142, 145 (W.D. Tex. 1994) ("Based upon . . . three Supreme Court decisions, this Court is of the opinion that a private cause of action for damages under Title IX does exist in this case, and Baylor's Motion to Dismiss should be denied.").

And Plaintiff also notes that his position cannot be so easily overlooked, as Defendants suggest, because there is a Circuit split on the question presented. *See, e.g., Lakoski v. James,* 66 F.3d 751, 758 (5th Cir. 1995) ("Title IX prohibits the same employment practices proscribed by Title VII . . . individuals seeking money damages for employment discrimination on the basis of sex in federally funded educational institutions may not assert Title IX either directly or derivatively through § 1983."); *Ivan v. Kent State Univ .,* 1996 WL 422496 (6th Cir. July 26, 1996) ("[T]he court overrules the conclusion reached by the district court . . . that Title VII preempts an individual's private remedy under Title IX."); *Preston v. Commonwealth of Va.,* 31 F.3d 203, 205–06 (4th Cir. 1994) ("An implied private

right of action exists for enforcement of Title IX. This implied right extends to employment discrimination on the basis of gender by educational institutions receiving federal funds.") (citations omitted).

Central to the split among the federal courts is a disagreement over the parameters of Title IX in connection with three Supreme Court cases: *Cannon v. University of Chicago,* 441 U.S. 677 (1979); *Bell,* 456 U.S. 512; *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60 (1992). In *Cannon*, the Supreme Court found that a plaintiff – who alleged that she was denied admission to medical schools receiving federal funds, had a private cause of action under Title IX despite any express language in the statute. In *Bell*, the Court upheld regulations by the interpreted § 901(a) of Title IX as covering and protecting students and employees of federally funded programs from gender discrimination. *See* 456 U.S. at 530. And in *Franklin*, the Court held that money damages were available for a student who filed an action for sexual harassment under Title IX. *See* 503 U.S. at 63.

After full consideration of the arguments presented, the Court finds that Plaintiff's Title IX claim against FIU is preempted by Title VII as a matter of law. The weight of authority favors Defendants because there is compelling evidence "that Title IX was not intended to enable employees of educational institutions complaining of gender discrimination to bypass the remedial scheme Congress established in Title VII." *Urie v. Yale Univ.*, 331 F. Supp. 2d 94, 97–98 (D. Conn. 2004) (citing *Waid v. Merrill Area Public Schools,* 91 F.3d 857, 861–62 (7th Cir. 1996); *Lakoski,* 66 F.3d at 753–54; *Vega v. State University of New York Board of*

*Trustees,* 2000 WL 381430,*3 (S.D.N.Y. 2000)); *see also Cooper v. Gustavus Adolphus College,* 957 F. Supp. 191, 193 (D. Minn. 1997); *Howard v. Bd. of Educ. of Sycamore Community Unit Sch. Dist.,* 893 F. Supp. 808, 815 (N.D. Ill. 1995); *Wedding v. Univ. of Toledo,* 862 F. Supp. 201, 203–04 (N.D. Ohio 1994).

The Fifth Circuit's decision in *Lakoski* is perhaps the most persuasive decision that addresses the question presented. In *Lakoski*, the plaintiff joined the faculty of the University of Texas as a tenure-track assistant professor in the Department of Pharmacology. The University eventually recommended that Dr. Lakoski not be recommended for tenure. As a result, plaintiff alleged that the denial for tenure constituted intentional sex discrimination under Title IX. At trial, Dr. Lakoski presented evidence that – in evaluating her for promotion and tenure – the University imposed standards by which male faculty members were not judged. The Fifth Circuit reversed the judgment in favor of the plaintiff and held that Title VII provides the *exclusive* remedy for individuals seeking monetary damages for alleged employment discrimination in federally funded educational institutions.

In reaching its decision, the Fifth Circuit provided an in-depth analysis of whether Title VII can preempt Title IX. The Court noted that "neither *Bell*[4] nor *Franklin* required the Supreme Court to address the relationship between Title VII and Title IX." *Lakoski*, 66 F.3d at 754. And both *Cannon* and *Franklin* involved

---

4 The Fifth Circuit also distinguished *Bell* on the basis that the case did not involve a claim by an individual for money damages for discrimination. Instead, *Bell* "addressed Title IX's prohibition of employment discrimination in a challenge to the validity of administrative regulations terminating federal funding of educational institutions that discriminated on the basis of sex in their employment practices." *Lakoski*, 66 F.3d at 754.

claims of students at federally funded educational institutions rather than claims of employment discrimination by an employee. "In short, *Cannon, Bell,* and *Franklin* all presented legal questions in which Title VII hovered on the distant horizon, if it was implicated at all" whereas the question of preemption requires "Title VII [to] occup[y] center stage." *Id*. at 754. Because the three aforementioned Supreme Court cases were all distinguishable and a private remedy was available under Title VII for aggrieved employees, the Fifth Circuit refused to find an implied right of action for damages under Title IX for employment discrimination.

The Fifth Circuit also explained that the legislative history of Title VII supports the doctrine of preemption because it "suggests that, in enacting Title IX, Congress chose two remedies for the same right, not two rights addressing the same problem." *Id*. at 757. As such, Title VII provides *individuals* with judicial redress for employment discrimination whereas Title IX empowers *federal agencies* that provide funds to educational institutions to terminate funding upon a finding of employment discrimination. "In other words, Congress intended to bolster the enforcement of the pre-existing Title VII prohibition of sex discrimination in federally funded educational institutions; Congress did not intend Title IX to create a mechanism by which *individuals* could circumvent the pre-existing Title VII remedies." *Id*. at 757 (emphasis added).

The administrative regulations further support the Fifth Circuit's decision in *Lakoski* because Title IX's proscription of sex discrimination is no different than Title VII's. Specifically, the "Department of Justice regulations governing

procedures for investigating charges of employment discrimination brought under Title IX provide that '[i]n any investigation, compliance review, hearing or other proceeding, agencies shall consider title VII case law and EEOC Guidelines, 29 CFR parts 1604 through 1607, unless inapplicable, in determining whether a recipient of Federal financial assistance has engaged in an unlawful employment practice.'" *Id.* at 757 (quoting 28 C.F.R. § 42.604). And the regulations adopted in connection with the Equal Employment Commission adopt an identical scope. *See* 29 C.F.R. § 1691.4 (1994). Therefore, the administrative regulations support the conclusion that Title VII and Title IX provide two different remedies for the same right – one for the individual and the other for federal agencies.

We are further persuaded that Plaintiff's Title IX claim must be preempted because of the Supreme Court's decisions in *Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 378 (1979) and *Brown v. General Servs. Admin.,* 425 U.S. 820, 835 (1976). In those two cases, "the Court held that (1) Title VII preempts claims brought under § 1985 and alleging violations of Title VII, and (2) Title VII provides the exclusive judicial remedy for federal employees' claims of employment discrimination." *Schultz*, 2007 WL 1490714, at *2. Specifically, the Court in *Novotny* held that "if a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of these detailed and specific provisions of the law." *Novotny*, 442 U.S. 366, 375–76.

The same reasoning applies here. If Plaintiff is allowed to proceed with a Title IX claim for gender discrimination, he would – in effect – be permitted to skirt

around the specific relief accorded to individuals for employment discrimination already provided under Title VII. This would flout the Supreme Court's decision in *Brown* because "in a variety of contexts the Court has held that a precisely drawn, detailed statute preempts more general remedies." *Brown,* 425 U.S. at 834. In other words, Plaintiff's actions would "eviscerate Title VII's technical and administrative requirements, thereby giving plaintiffs who work at federally funded institutions unfettered ability to bring what are in reality Title VII sexual discrimination claims without adhering to the same rules required of every other employment discrimination plaintiff in the country." *Gibson v. Hickman,* 2 F. Supp. 2d 1481, 1484 (M.D. Ga. 1998); *see also Tompkins v. Barker,* 2011 WL 3583413, at *5 (M.D. Ala. July 13, 2011) ("The undersigned can conceive of no reason why Congress would intend that a plaintiff-employee of a federally funded education institution be allowed to circumvent the unique legal and administrative requirements imposed on employees asserting identical employment discrimination claims under Title VII merely because the plaintiff is employed by a federally funded education institution."). Therefore, based on abundant authority and compelling policy reasons, Plaintiff cannot sue for the same relief under both Title IX and Title VII.

Plaintiff takes issue with the reasoning in *Lakoski* on the basis that the allegations here are distinguishable in that his Title IX claim is materially different than his Title VII claim. Plaintiff argues that there is no overlap whatsoever and that the Title IX claim should not be preempted because there is no available

remedy under Title VII. For example, Plaintiff contends that his Title IX allegations focus discretely on (1) the glaring insufficiencies of FIU's investigation of a student's claims of sexual misconduct against a professor, (2) the outcome of the investigation, and (3) Plaintiff's termination.

Yet, Plaintiff's Complaint makes clear that the allegations that underlie his Title IX claim are the same allegations that underlie his Title VII claim. Both are premised on the same general factual allegations and the same underlying conduct. In fact, Plaintiff's Title VII claim incorporates all of the general allegations imbedded in his Title IX claim. (*Compare* Compl. ¶ 241 (incorporating all general allegations into Title IX claim) *with* Compl. ¶ 295 (incorporating all general allegations into Plaintiff's Title VII claim)).

Furthermore, the majority of courts have recognized that an "action that can be brought under Title VII cannot be brought under Title IX" because "the sanctity of Title VII's comprehensive scope [must be protected], as well as the lawmakers' intention to see that its remedial scheme not be bypassed." *Blazquez v. Bd. of Educ. of City of Chicago*, 2006 WL 3320538, at *11 (N.D. Ill. Nov. 14, 2006) (citations omitted); *see also Howard v. Bd. of Educ. of Sycamore Cmty. Unit Sch. Dist. No. 427,* 893 F. Supp. 808, 814-15 (N.D. Ill. 1995); *Burrell v. City Univ. of New York,* 995 F. Supp. 398 (S.D.N.Y. 1998) (discussing courts' general approach to Title IX's preemption by Title VII). And even if Plaintiff could argue that the allegations underlying his Title IX and Title VII claim were materially different, there is ample authority that the prohibitions of discrimination on the basis of sex under the two

statutes are the same. *See Preston,* 31 F.3d at 206 (4th Cir. 1994) (holding that Title VII principles govern claims of employment discrimination under Title IX); *Roberts v. Colorado State Bd. of Agric.,* 998 F.2d 824, 832 (10th Cir. 1993); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 897 (1st Cir.1988); *Mabry v. State Bd. of Community Colleges & Occupational Educ.,* 813 F.2d 311 (10th Cir. 1987).[5]

Therefore, Plaintiff's Title VII claim preempts his Title IX claim (Count I), and for the reasons discussed above, Defendants' Motion – on this basis – should be **GRANTED with prejudice**.

***B. <u>Title VII Claim (Count VI) against FIU</u>***

Next, Defendants argue that Count VI of Plaintiff's Complaint – a Title VII claim of gender discrimination based on disparate treatment – against FIU fails because Plaintiff failed to exhaust his administrative remedies. It is well established that a plaintiff must first exhaust her administrative remedies before filing suit under Title VII. *See H&R Block E. Enterprises, Inc. v. Morris*, 606 F.3d 1285, 1295 (11th Cir. 2010) (citing *Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1317 (11th Cir. 2001)).

---

5 Plaintiff also relies heavily on *Doe v. Lynn Univ., Inc.*, 2017 WL 237631 (S.D. Fla. Jan. 19, 2017) and *Yusuf v. Vassar Coll.*, 35 F.3d 709, 711 (2d Cir. 1994). Yet, both cases involve claims of gender discrimination by a *student* of an educational institution – not an *employee*. These cases are materially distinguishable because they hold that a student does not have a valid claim for employment discrimination under Title VII. Plaintiff does not suffer from the same obstacle. Moreover, Plaintiff's reliance on these two cases is misplaced because neither contains an analysis on the question of preemption. So, both *Doe* and *Yusuf* are unhelpful as it relates to the question of whether Title VII preempts a claim of gender discrimination under Title IX.

In Florida – a deferral state – "[a] plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission . . . within 300 days of the discriminatory act, at the latest." *Cabrera-Rodriguez v. Sch. Bd. of Miami-Dade Cty., Fla.*, 2013 WL 1962996, at *2 (S.D. Fla. May 10, 2013) (citing *Maynard v. Pneumatic Prods. Corp.,* 256 F.3d 1259, 1262 (11th Cir. 2001)); *see also E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) ("For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act" and "only those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable.") (internal citations omitted) (citing *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002); *Taylor v. Hudson Pulp & Paper Co.,* 788 F.2d 1455, 1458 (11th Cir. 1986)). A plaintiff's failure to timely file his or her charge renders the claims at issue time-barred. *See Clarke v. Winn-Dixie Stores, Inc.*, 2007 WL 3011018, at *3 (S.D. Fla. Oct. 12, 2007).

Defendants argue that the record is undisputed that Plaintiff failed to timely file his EEOC charge as the time to do so purportedly began to run when Plaintiff was advised in writing on August 17, 2015 that his employment would be terminated due to sexual misconduct. [D.E. 14-1]. Defendants contend that Plaintiff did not file his EEOC charge until July 6, 2016, approximately one month late. Because an adverse employment action occurs when an employer makes a final decision and communicates it to the employee, Defendants contend that the Plaintiff's EEOC charge is untimely as a matter of law and must be dismissed with

prejudice. *See Thomas v. CVS/Pharmacy*, 336 F. App'x 913, 915 (11th Cir. 2009) ("An adverse employment action is deemed to have occurred when the employer made the final decision and communicated it to the employee.") (citation omitted).

As support, Defendants rely on the Supreme Court's decision in *Delaware State Coll. v. Ricks,* 449 U.S. 250, 258 (1980), for the proposition that whether or not a plaintiff's actual termination date occurs later than a termination notice is immaterial:

> In sum, the only alleged discrimination occurred–and the filing limitations periods therefore commenced–at the time the tenure decision was made and communicated to Ricks. That is so even though one of the *effects* of the denial of tenure–the eventual loss of a teaching position–did not occur until later. The Court of Appeals for the Ninth Circuit correctly held, in a similar tenure case, that "[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (1979) (emphasis added); *see United Air Lines, Inc. v. Evans*, 431 U.S., at 558 . . . We conclude for the foregoing reasons that the limitations periods commenced to run when the tenure decision was made and Ricks was notified.

*Id*. at 258–59 (internal footnote omitted). The Court also added that a professor's pursuit of a grievance, "or some other method of collateral review of an employment decision does not toll the running of the limitations period[]" because the "limitations period normally commence[s] when the employer's decision is made." *Id*. at 261; *see also Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 234–35 1976) ("Unless the grievance procedures resulted in her reinstatement, she would not be entitled to be paid for the period during which the grievance procedures were being implemented.") (footnote omitted); *Liu v. Univ. of Miami*, 138 F. Supp. 3d 1360, 1370 (S.D. Fla.

2015) ("[T]he filing limitations period commences at the time the termination decision is made and communicated to Plaintiff even though the last date of employment does not occur until later.") (citing *Ricks,* 449 U.S. at 258).

Defendants further argue that this principle has been applied numerous times in the university context where professors are typically provided advance notice of an upcoming termination and that the facts presented do not change the analysis. *See Liu*, 138 F. Supp. 3d at 1370 ("[S]ince Plaintiff was advised in writing on October 7, 2011, that her employment would be terminated, any charge of discrimination with the EEOC had to be filed within 300 days of that notification (on or before August 2, 2012) . . . Plaintiff did not file her charge until March 21, 2013."); *see also Nichols v. Muskingum Coll.,* 318 F.3d 674, 676–677 (6th Cir. 2003) (finding Title VII claim timely because the professor filed her charge 295 days after she received the notification of non-renewal); *Greenan v. Bd. of Educ. of Worcester Cnty.,* 783 F. Supp. 2d 782, 787 (D. Md. 2011) (permitting discrimination claim to proceed because plaintiff's "EEOC complaint was filed within 300 days of the [employer's] decision not to renew her teaching contract"); *Ode v. Omtvedt,* 883 F. Supp. 1308, 1316 (D. Neb. 1995) ("[T]he time for filing the EEOC charge began to run when [the professor] was unambiguously notified in writing in June, 1992, that his contract would not be renewed"), *aff'd,* 81 F.3d 165 (8th Cir. 1996); *George v. Kan. State Univ.,* 1991 WL 286915, at *1 (D. Kan. Dec. 4, 1991) (professor was required to file his EEOC charge within 300 days after he was advised his contract would not be renewed (internal citations omitted)).

Plaintiff's response claims that Defendants' argument lacks merit because the time to file an EEOC charge did not commence until Plaintiff received a final letter on September 11, 2015 that terminated his employment effective September 14, 2015. The September letter stated, in pertinent part, that "[t]he final determination is that competent, substantial evidence supports the finding that you engaged in sexual misconduct in violation of the University policy on sexual harassment" and that "[y]our misconduct warrants the *immediate termination* of your employment. [D.E. 1] (emphasis added). Because the September letter allegedly constituted final notice of Plaintiff's upcoming termination, Plaintiff argues that September 11 is the date in which the clock began to run with respect to an EEOC charge. Plaintiff also argues that the August 17 letter could not have been the final notice or decision from the University because Plaintiff had the right to respond to the notice within ten days. As such, Plaintiff claims that his EEOC charge of discrimination – that was filed on July 6, 2015 – is timely because it occurred within 300 days of the final letter terminating his employment.[6]

The dispute on whether Plaintiff exhausted his administrative remedies is tethered to which letter started the clock for Plaintiff to file an EEOC charge. While Defendants argue that the August 17, 2015 letter controls, Plaintiff contends that the September 11, 2015 letter is most relevant. If the filing clock began to run

6 By contrast, Plaintiff contends that the August 17, 2015 notice of intent to terminate Plaintiff's employment was purportedly tentative, and not final. Because the August letter did not provide a date upon which Plaintiff's employment would terminate, Plaintiff suggests that an adverse employment did not occur until the September letter was issued.

from the August 17, 2015[7] notice of termination, there is no dispute that Plaintiff's claim is time-barred and must be dismissed. Two specific elements are generally necessary to determine the date on which an adverse employment practice occurred. "First, there must be a final, ultimate, non-tentative decision to terminate the employee" and "[s]econd, the employer must give the employee 'unequivocal' notice of its final termination decision." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) (citing *Dvorak v. Mostardi Platt Assocs., Inc.,* 289 F.3d 479, 486 (7th Cir. 2002)). Both elements are generally necessary to start the limitations period as neither alone is sufficient. *See Flannery*, 354 F.3d at 637. Therefore, the threshold issue is *when* the adverse employment action occurred.

In Defendants' reply, they argue that Plaintiff's argument ignores the important fact that the September 11 letter (1) cites the same FIU policy references in the August 17 letter, (2) encloses and incorporates by reference the August 17 letter, and (3) states that the "reasons for and the facts that have led to [the] termination were detailed in the enclosed August 17th letter to you and its enclosed report." [D.E. 16-1]. In other words, the September 11 letter purportedly restates what was previously mentioned in the August 17 letter – that FIU's investigation

---

7 In the August 17 letter, FIU informed Plaintiff to "please consider this letter as notification of the University's intent to dismiss you from your position as associate professor. The reason for this action is misconduct as described below." [D.E. 14-1]. The letter described Plaintiff's sexual misconduct with a student and included a copy of FIU's investigate report into Plaintiff's sexual misconduct. The letter then concluded by stating that "[b]ased on the findings contained in the report, I have concluded that there is just cause to terminate your employment." *Id.* The letter provided Plaintiff with the right to respond to FIU within ten calendar days from the date of the letter before the proposed action would be taken.

into Plaintiff's sexual misconduct warranted termination and therefore the August letter constituted final notice.

Specifically, the August 17 letter indicates that the University sought to terminate Plaintiff with the language that "this letter [i]s notification of the University's intent to dismiss you from your position as associate professor" at FIU. [D.E. 14-1]. However, the August 17 letter is somewhat ambiguous with respect to whether the decision was *unequivocally final*. This conclusion is supported by the letter's vague offer for Plaintiff to respond in writing within ten calendar days. It is not clear, as a matter of law, whether the purpose of the response was to allow for a grievance process or to give Defendant an opportunity to reverse the University's decision to terminate him. As we stated earlier, a notice must be unequivocal to begin the clock to file an EEOC charge. *See Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 288 (7th Cir. 1986) ("[U]nder *Ricks* and its progeny unequivocal notice of termination is all that is required to start the limitations period running; it is not necessary for such notice to be in writing.") (citations omitted). Therefore, we hold that the facts presented at this stage of the ligation permit the conclusion that either the August 17 or the September 11 notice of termination could be the operative date for Plaintiff's termination. Because we cannot decide this factual question at this time and the issue would be better adjudicated at the summary judgment stage, Defendants' Motion on this basis should be **DENIED**.

### *C. Prima Facie Case of Discrimination (Count VI) against FIU*

As an alternative to the argument presented above in connection with the untimeliness of Plaintiff's EEOC charge, Defendants argue that Plaintiff's Title VII claim against FIU should also be dismissed for failure to state a prima facie claim of discrimination. *See Edwards v. Prime, Inc.,* 602 F.3d 1276, 1300 (11th Cir. 2010); *cf. Jackson v. BellSouth Telecomms.,* 372 F.3d 1250, 1270–71 (11th Cir. 2004) (explaining, pre-*Twombly,* that *Swierkiewicz* "did not even remotely suggest that a pleading could survive dismissal when it consisted of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based"). It is well established that a prima facie case of disparate treatment discrimination[8] requires that the plaintiff "prove that (1) he belongs to a protected class, (2) he was subject to an adverse employment action, (3) the employer treated similarly-situated employees outside his protected class more favorably, and (4) he was qualified for the job." *Carter v. Bowman*, 172 F. App'x 915, 917 (11th Cir. 2006) (citation omitted).

To meet the third element of a disparate treatment claim, a plaintiff must "show he is similarly-situated in all relevant respects to those employees." *Id.* (citation omitted); *see also Woods v. Cent. Fellowship Christian Acad.*, 545 F. App'x 939, 945 (11th Cir. 2013) ("When a Title VII plaintiff attempts to show discriminatory intent by pointing to non-protected class members treated

---

8 Count VII in Plaintiff's Complaint is specifically referred to as a "Disparate Treatment" claim as Plaintiff alleges that his termination "occurred under circumstances that support an *inference* of unlawful termination." [D.E. 1 at ¶ 301] (emphasis added).

differently, the proffered comparator 'must be nearly identical to the plaintiff.'") (citing *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1091 (11th Cir. 2004)). More specifically, "the individuals with whom plaintiff seeks to compare himself must have: (1) dealt with the same supervisor, (2) been subject to the same standards, and (3) engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Sanguinetti v. United Parcel Serv., Inc.*, 114 F. Supp. 2d 1313, 1317 (S.D. Fla. 2000), *aff'd*, 254 F.3d 75 (11th Cir. 2001) (citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992); *Patterson v. Wal–Mart Stores, Inc.,* 1999 WL 1427751, *8 (M.D. Fla. Dec. 22, 1999)); *see also Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997) ("[T]he plaintiff must show that he and the employees are similarly situated in all relevant aspects.") (citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992)).

Defendants argue that the only comparator identified by Plaintiff throughout his entire Complaint is Rivera. Yet, Rivera is purportedly not a plausible comparator to survive even on a motion to dismiss because a university dean is not in any way "similarly situated" to a graduate student because the latter is not an employee. There is no dispute that Plaintiff was formerly employed by the University as a professor and associate dean of FIU's College of Architecture, and participated as a senior administrator in a study abroad program. But, Defendants argue that Rivera was only a graduate student participant in a study abroad program – and never an employee – and therefore the two could never be "similarly

situated" as a matter of law. As such, Defendants persuasively contend that – even at the motion to dismiss stage – Plaintiff's failure to provide a valid comparator renders his Title VII cause of action defective and subject to dismissal.

Plaintiff's response is that his Title VII claim against FIU cannot be dismissed for failing to identify an employee as a comparator because (1) the question is best reserved on a motion for summary judgment, (2) Rivera is a proper comparator because she and Plaintiff were governed by the identical code of conduct and subject to identical standards of investigation, and (3) Plaintiff has presented a mosaic of circumstantial evidence and statistical facts to create an inference of discrimination.

As for Plaintiff's first argument, Plaintiff is correct that at the motion to dismiss stage he need only plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 662 (quoting *Twombly,* 550 U.S. at 544). In other words, an allegation that a plaintiff is similarly situated to other *employees* – and assumed as true for the purposes of a 12(b)(6) motion – will survive a motion to dismiss. However, here, the only comparator that Plaintiff specifically identifies is Rivera who Plaintiff admits repeatedly was only a graduate student – not an employee. [D.E. 1]. The allegations in Plaintiff's Complaint also make clear that his Title VII claim is based on a theory of disparate treatment which requires, under Eleventh Circuit precedent, a comparator "to satisfy [the] burden of establishing a prima facie case of disparate treatment." *Gilmore v. Nat'l Mail Handlers Union Local 318*, 517 F.

App'x 784, 787 n.2 (11th Cir. 2013); *see also Stone & Webster Const., Inc. v. U.S. Dep't of Labor*, 684 F.3d 1127, 1135 (11th Cir. 2012) ("When evaluating an allegation of disparate treatment, we require that a comparator be '"similarly situated to the plaintiff in all relevant respects."') (quoting *Rioux v. City of Atlanta, Ga.,* 520 F.3d 1269, 1280 (11th Cir. 2008) (internal quotation marks and alterations omitted)).

Therefore, Plaintiff's suggestion – that the sufficiency of a comparator or the determination of whether there are enough details underlying the claim for gender discrimination cannot be decided at the motion to dismiss stage – is incorrect as a matter of law if there are insufficient facts to state a plausible claim for relief. *See, e.g.*, *Harrell v. Florida Parole Comm'n*, 479 F. App'x 234, 237 (11th Cir. 2012) (affirming the dismissal of a complaint at the motion to dismiss stage because "Harrell neither alleged that he was treated differently than similarly situated comparators nor that the alleged differential treatment was based on a constitutionally protected interest."). Accordingly, Plaintiff's first argument lacks merit.

Plaintiff's second argument – that Rivera is a proper comparator because she and Plaintiff were governed by the identical code of conduct at FIU and subject to identical standards of investigation – is equally unconvincing. As support, Plaintiff relies on the Eleventh Circuit's decision in *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999). In *Lathem*, the Eleventh Circuit found that in determining whether two employees are similarly situated, "[t]he relevant

inquiry is not whether the *employees* hold the same job titles, but whether the employer subjected them to different employment policies." *Id.* (emphasis added) (citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1186 (11th Cir. 1984)). The problem with Plaintiff's reliance on *Lathem* is that the predicate for the Eleventh Circuit's reasoning is that the comparator must be an employee. And every Eleventh Circuit decision involving the analysis of a comparator – that the Court has reviewed – has adhered to this principle. *See, e.g., Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) ("[I]t is necessary to consider whether the *employees* are involved in or accused of the same or similar conduct and are disciplined in different ways.") (emphasis added) (citation and internal quotation marks omitted).

Therefore, the Complaint improperly attempts to compare Plaintiff, who was undoubtedly an employee, with a graduate student. *See, e.g.*, *King v. Piggly Wiggly Alabama Distribution Co.*, 929 F. Supp. 2d 1215, 1221 (N.D. Ala. 2013) ("To the extent that Mr. King has attempted to use the Penske employee as a comparator, there is no evidence in the record that Mr. King's supervisors at PWADC had any authority to discipline a non-employee, like the Penske worker."). The Court can find no case – and the Plaintiff cites none – that supports the contention that a non-employee can ever constitute a comparator for the purposes of a Title VII cause of action. As such, a comparator must be "nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer," and therefore Plaintiff's comparison to a graduate student is insufficient as a matter of law to

survive a motion to dismiss. *See Wilson,* 376 F.3d at 1091; *see also Stallworth v. Okaloosa Cty. Sch. Dist.*, 2011 WL 4552187, at *9 (N.D. Fla. Sept. 30, 2011) ("A relevant comparator *must be an employee*") (emphasis added) (citing Wilson, 376 F.3d at 1091).

Plaintiff's final argument in support of a prima facie claim of discrimination is that – even if Plaintiff failed to allege a proper comparator – Plaintiff purportedly presented a mosaic of circumstantial evidence and statistical facts to create at least an inference of gender discrimination. Plaintiff is correct that he may raise a reasonable inference of an employer's discriminatory intent through various forms of circumstantial evidence, even in the absence of a proper comparator, to survive a motion to dismiss. *See Rioux v. City of Atlanta,* 520 F.3d 1269, 1281 (11th Cir. 2008) (holding that the plaintiff established a prima facie case of racial discrimination when he did not present evidence of a comparator but presented other circumstantial evidence that was sufficient); *see also Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253, 1264 (11th Cir. 2010) (stating that the circumstantial evidence necessary to present a Title VII case of discrimination under *McDonnell Douglas* is "flexible and depend[s] on the particular situation" (citations omitted)); *cf. Burke–Fowler v. Orange County, Fla.,* 447 F.3d 1319, 1325 (11th Cir. 2006) (affirming the district court's grant of summary judgment because plaintiff "failed to establish valid comparators and presented *no other circumstantial evidence suggesting racial discrimination*" (emphasis added)). In other words, "when a plaintiff falls short of such a *prima facie* case the court must

determine whether the plaintiff may have nevertheless alleged enough to survive a Rule 12(b)(6) motion." *Ashmore v. F.A.A.*, 2011 WL 3915752, at *3 (S.D. Fla. Sept. 2, 2011).

Specifically, Plaintiff argues in his response that "FIU subjected [him] to disparate treatment by failing to afford due consideration to [his] parallel Title IX complaint against Rivera (for sexual misconduct)" and that his "complaint alleges statistical facts which create an inference that FIU's implementation of OCR Title IX guidelines has a gender-biased disparate impact on males at FIU." [D.E. 16]. While Plaintiff need not allege sufficient facts to make out a prima facie case of discrimination in order to survive a motion to dismiss, *Davis v. Coca–Cola Bottling Co. Consol.,* 516 F.3d 955, 974 (11th Cir. 2008), he "must provide, 'enough factual matter (taken as true) to suggest' intentional [gender] discrimination." *Id.* (citing *Twombly,* 550 U.S. at 555); *see also Henderson v. JP Morgan Chase Bank, N .A.,* 436 F. App'x 935, 937 (11th Cir. 2011) ("A complaint in an employment discrimination case need not contain specific facts establishing a *prima facie* case under the evidentiary framework for such cases to survive a motion to dismiss. But complaints alleging discrimination still must meet the 'plausibility standard' of *Twombly* and *Iqbal*." (internal citation omitted)).

After full consideration of Plaintiff's Complaint, we find that it contains just enough factual details – if accepted as true – to create a plausible inference of gender discrimination to pass muster under *Twombly* and *Iqbal*. From a statistical standpoint, Plaintiff alleges that FIU has no reported incidents of sexual

misconduct against any female employee where that female individual was disciplined as a result of her conduct. Plaintiff also alleges that once any male employee is accused of sexual misconduct at FIU, the investigative reports are slanted and deliberately drafted against the accused males. This is purportedly accomplished by FIU engaging in a pattern and practice of failing to adhere to its own guidelines and regulations, which has resulted in no sexual misconduct charges ever being brought against a female employee. Specifically, Rosenberg (FIU's president) is allegedly motivated by gender bias and engages in a custom or policy to be deliberately indifferent to the sexual harassment claims of all male employees at the University. Defendant is quite skeptical that the facts alleged in the Complaint reflect gender discrimination. That skepticism may be well-founded, but, at this stage of the proceedings, the Court declines to find as a matter of law that Plaintiff's claim is so lacking in plausibility as to warrant dismissal. As such, Defendants' Motion on this basis should be **DENIED**.

### *D. Title IX Claim (Count I) against the Individual Defendants*

Next, Defendants argue that Count I of Plaintiff's Complaint must be dismissed because it seeks to hold "[a]ll Individual Defendants in their Official Capacities" liable under Title IX. [D.E. 1 at 55]. Plaintiff concedes in his response that the Complaint reflects a scrivener's error and that Count I should be dismissed against the Individual Defendants. Therefore, Defendants' Motion, as it relates to Count I, is **GRANTED with prejudice**.[9]

---

[9] "Title IX does not recognize individual liability." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1170 n.11 (11th Cir. 2003) (citing *Hartley v. Parnell,* 193 F.3d

### *E. Section 1983 Claims (Counts II-V) against the Individual Defendants*

In Count II-V, Plaintiff alleges section 1983 claims against the Individual Defendants on the basis that they violated his (1) Fourteenth Amendment rights to procedural due process (deprivation of property and liberty), (2) the Equal Protection Clause, and (3) Title IX. Section 1983 "provides every person with the right to sue those acting under color of state law for violations of federal constitutional and statutory provisions." *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1299 (11th Cir. 2007) (citing 42 U.S.C. § 1983). However, section 1983 does not create substantive federal rights; it acts as merely a vehicle to bring particular suits. *See Whiting v. Traylor,* 85 F.3d 581, 583 (11th Cir. 1996). Therefore, Plaintiff must point to a specific federal right – in connection with section 1983 – that the Defendants allegedly violated.

Defendants first argue that the Complaint is unclear on whether the Individual Defendants are being sued in their individual or official capacity. Yet, to the extent the latter applies, Defendants contend that Plaintiff's claims against the Individual Defendants in their official capacity are barred by the Eleventh Amendment. *See, e.g.*, *Washington v. Bauer*, 149 F. App'x 867, 870 (11th Cir. 2005) ("In regard to § 1983 suits against state agencies and state officials, in their official

---

1263, 1270 (11th Cir. 1999) ("Individual school officials . . . may not be held liable under Title IX.") (citation omitted); *Floyd v. Waiters,* 133 F.3d 786, 789 (11th Cir. 1998) ("[A] Title IX claim can only be brought against a grant recipient—that is, a local school district—and not an individual.") (citations and quotations omitted) *vacated on other grounds by* 525 U.S. 802 (1998), *reinstated by* 171 F.3d 1264 (11th Cir. 1999); *see also Smith v. Metro. Sch. Dist. Perry Township,* 128 F.3d 1014, 1018–19 (7th Cir. 1997).

capacities, the Eleventh Amendment of the Federal Constitution generally prohibits such actions. *Miller v. King,* 384 F.3d 1248, 1259–60 (11th Cir. 2004), unless the state has waived immunity or Congress has abrogated it.") (citing *Gamble v. The Florida Dept. of Health and Rehabilitative Servs.,* 779 F.2d 1509, 1512 (11th Cir. 1986)).

Plaintiff agrees with Defendants' position that the Individual Defendants cannot be held liable under section 1983 in their official capacities. In fact, Plaintiff contends that the Complaint unambiguously seeks to hold the Individual Defendants liable *only* in their individual capacities. Because the parties agree that there is no cause of action against the Individual Defendants in their official capacities under section 1983, Defendants' Motion, as it relates to this issue, is **DENIED as moot**.

Next, Defendants argue that that the Individual Defendants are entitled to qualified immunity under Counts II-V because "federal law provides government officials a qualified immunity when sued individually for an alleged violation of a constitutional right . . . ." *Randall v. Scott*, 610 F.3d 701, 714 (11th Cir. 2010) (citing *Kentucky v. Graham,* 473 U.S. 159, 166-67 (1985); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir. 1991) (per curiam)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). As such, qualified immunity "offers complete

protection for individual government officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Randall*, 610 F.3d at 714 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (footnote omitted)); *see also Courson v. McMillian,* 939 F.2d 1479, 1486 (11th Cir. 1991) ("Qualified immunity shields governmental officials executing discretionary responsibilities from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (citing *Harlow,* 457 U.S. at 818)).

Rather than provide a plausible claim for relief, Plaintiff allegedly offers nothing but implausible conspiracy theories to attempt to undermine FIU's investigation into Plaintiff's sexual misconduct. Because Plaintiff's own allegations purportedly make clear that the Individual Defendants acted in accordance with their official duties as FIU employees, Defendants argue that the claims asserted must be dismissed accordingly.

Plaintiff argues in response that his Complaint contains sufficient allegations because he has adequately pled that he had a clearly established Fourteenth Amendment property and liberty right in his continued tenured employment, and reputation (Counts II-III), and a right to be free of gender bias pursuant to the Equal Protection Clause and Title IX (Counts IV and V). Therefore, Plaintiff has purportedly alleged multiple facts to support that the Individual Defendants would

have known that their conduct violated those rights and that there is an affirmative causal connection between that conduct and the constitution deprivation.

It is well established that "[u]nder the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court," yet "the Eleventh Amendment does not protect state employees sued in their individual capacity for employment-related acts." *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). In *Saucier v. Katz,* 533 U.S. 194, 201 (2001), the U.S. Supreme Court set forth a two-step analysis for resolving qualified immunity claims. First, a court must decide whether the facts alleged violate a constitutional right. And second, the court must decide whether the right was clearly established. *See id*. Only after completing the first step may a court turn to "the next, sequential step," to decide "whether the right was clearly established." *Id*. at 195.

The second step – of demonstrating a violation of clearly established law – is characterized as a constitutional right that is so sufficiently established that public officials have fair notice that the conduct alleged is prohibited. *See Hope v. Pelzer,* 536 U.S. 730, 739 (2002) ("For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." (internal citations and quotation omitted)); *see*

*also Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1300 (11th Cir. 2007) ("Under the second step, the plaintiff must establish that the state of the law when the challenged events occurred was such that the defendant had fair warning that his alleged treatment of the plaintiff was unconstitutional.") (citing *Willingham v. Loughnan,* 321 F.3d 1299, 1301 (11th Cir. 2003)).

In meeting the burden of this two-step requirement, a plaintiff cannot simply point to propositions of law and posit that they are applicable. *See Muhammad v. Wainwright,* 839 F.2d 1422, 1424 (11th Cir. 1987). Instead, a plaintiff must show that "there exist[] sufficient case law establishing the contours of his or her constitutional rights such that the unlawfulness of the defendant's conduct would have been apparent to a reasonable official in the same circumstances and possessing the same knowledge as the defendant." *Nicholson v. Georgia Dep't of Human Res. (DHR)*, 918 F.2d 145, 147 (11th Cir. 1990) (citation omitted). If Plaintiff cannot point to any applicable case, Defendants are entitled to qualified immunity as a matter of law. *See id.*

Here, Plaintiff alleges in Counts II and III a violation of his Fourteenth Amendment rights to procedural due process. Beginning with Count 2, Plaintiff argues that the Individual Defendants deprived him of his *property interest* in his tenured employment at FIU without due process of law because he was not provided the following:

> (1) adequate notice of the reasons for his termination, (2) the names of adverse witnesses and the nature of their testimony; (3) a meaningful opportunity to be heard; and (4) the right to be heard by a tribunal that possesses some academic expertise and apparent impartiality

> towards the charges leveled against him, all as more particularly alleged above.

[D.E. 1 at ¶ 265].

There is no doubt that Plaintiff has adequately met the first step in *Saucier* and pled a violation of a constitutional right because as a matter of law, "[t]enured college professors and college professors terminated mid-contract have interests in their continued employment that are safeguarded by due process." *Laskar v. Peterson*, 771 F.3d 1291, 1297 (11th Cir. 2014) (citing *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 576–77 (1972)). And Plaintiff has also met the second *Saucier* requirement by demonstrating that his federal due process rights were clearly established at the time of his employment. In fact, the Eleventh Circuit held long ago that federal due process in the employment context requires four elements:

> (1) notice of the reasons for dismissal; (2) notice of the names of adverse witnesses and the nature of their testimony; (3) a meaningful opportunity to be heard; and (4) the right to be heard by a tribunal which possesses some academic expertise and an apparent impartiality toward the charges leveled against the teacher.

*Holley v. Seminole Cty. Sch. Dist.*, 755 F.2d 1492, 1497 (11th Cir. 1985) (setting forth guidelines for minimum procedural due process). Because Plaintiff adequately alleged that his federal due process rights were violated, and that the associated constitutional right was clearly established at the time of his termination, there is no basis to find a valid defense of qualified immunity in defense of Count II. Accordingly, Defendants' Motion as it relates to Count II should be **DENIED**.

In Count III, Plaintiff alleges that the Individual Defendants violated the Fourteenth Amendment and denied him procedural due process. Specifically,

Plaintiff alleges that the Individual Defendants deprived him of his liberty interest in his *reputation* without due process of law by failing to exercise administrative control to prevent publication of an FIU-subsidized Student Media group's May 6, 2016 publication about Plaintiff entitled "Rape allegations brought against former associate dean." In other words, because of Defendants' alleged actions – in creating an intentional and malicious defamatory and stigmatizing impression of Plaintiff – Plaintiff argues that he has been deprived constitutional liberty without due process of law.

"In order to establish that a deprivation of a public employee's liberty interest has occurred without due process of law, the employee must prove that: (1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) was made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001) (citing *Buxton v. City of Plant City,* 871 F.2d 1037, 1042–43 (11th Cir. 1989)). In meeting the aforementioned elements, "[t]he Supreme Court . . . has held that injury to reputation, by itself, does not constitute the deprivation of a liberty or property interest protected under the Fourteenth Amendment." *Behrens v. Regier*, 422 F.3d 1255, 1259 (11th Cir. 2005) (citing *Paul v. Davis,* 424 U.S. 693, 701–02, 712 (1976)). "[I]n order to invoke the procedural protections of the Due Process Clause, a plaintiff would need to establish *more* than a mere defamation claim." *Behrens*, 422 F.3d at 1259 (citing *Paul,* 424 U.S. at 706); *Siegert v. Gilley,* 500 U.S. 226, 233 (1991) ("Defamation, by itself, is a

tort actionable under the laws of most States, but not a constitutional deprivation.”).

The Supreme Court’s decision in *Paul* created what the federal courts commonly refer to as the stigma-plus test. It essentially requires that a plaintiff claiming a deprivation based on reputation to establish “the fact of the defamation ‘plus’ the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause.” *Cannon*, 250 F.3d at 1302 (citing *Paul,* 424 U.S. at 701–02). Therefore, to meet the stigma-plus test and establish a liberty interest to implicate the Fourteenth Amendment, “the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law.” *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1296 (11th Cir. 2003) (citation omitted); *see also Cypress Ins. Co. v. Clark,* 144 F.3d 1435, 1436–37 (11th Cir. 1998) (“This rule, labeled the ‘stigma-plus’ standard, requires a plaintiff to show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation.”).

As the Supreme Court explained, the meaning of “liberty” or “property” in the Due Process Clause attain their constitutional status by virtue of the protections initially recognized under state law:

> It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either “liberty” or “property” as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the

> procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status . . . It was this alteration, officially removing the interest from the recognition and protection previously afforded by the State, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment.

*Paul,* 424 U.S. at 710–11 (citations and footnote omitted).[10]

In keeping with *Paul*, Count III of Plaintiff's Complaint should fail because, as explained in detail with respect to Count VII (discussed below), Plaintiff has not adequately pled a defamation cause of action under state law. And Plaintiff must show that he has a defamation right under Florida law before invoking the liberty interest of the Fourteenth Amendment. *See Behrens*, 422 F.3d at 1261 ("[A]s *Paul* demonstrated, Behrens must show that his alleged right or status has been previously recognized and protected under state law.") (citing *Paul,* 424 U.S. at 710–11); *see also Smith v. Org. of Foster Families for Equal. & Reform,* 431 U.S. 816, 845–46, (1977) (noting that when the "claimed interest" derives from a contractual relationship with the state, "it is appropriate to ascertain from state law the expectations and entitlements of the parties")). Accordingly, for the reasons discussed below in Count VII, Defendants' Motion as it relates to Count III should be **GRANTED without prejudice** because Plaintiff has failed to demonstrate that he has a valid cause of action for defamation under Florida law.

---

10 The Supreme Court also explained that other interests are "protected not by virtue of their recognition by the law of a particular State but because they are guaranteed in one of the provisions of the Bill of Rights which has been 'incorporated' into the Fourteenth Amendment." *Paul,* 424 U.S. at 711 n.5.

Finally, Count IV[11] alleges violations of equal protection under the Fourteenth Amendment.[12] The basis of Count IV is that the Individual Defendants violated his rights by denying him the benefits of employment and subjecting him to discrimination on the basis of sex. Specifically, Plaintiff alleges that – by orchestrating and ratifying an erroneous outcome to the investigation of Rivera's complaint – the Individual Defendants were motivated by gender bias to terminate Plaintiff's employment. Because Plaintiff's Complaint contains sufficient allegations of sex discrimination, Plaintiff has met the first *Saucier* requirement.

As for the second *Saucier* requirement, there is no doubt that the right to be free from sex discrimination is a clearly established constitutional right of which a reasonable person would have known. *See Williams*, 477 F.3d at 1300–01 ("The Equal Protection Clause confers a federal constitutional right to be free from sex discrimination.") (quoting *Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 273 (1979)). And the Eleventh Circuit has reinforced that finding in numerous cases. *See Badia v. City of Miami,* 133 F.3d 1443, 1445 (11th Cir. 1998) (no qualified immunity where race and sex discrimination motivated differential treatment of employee); *Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490,

---

11 The Court will not explore whether Plaintiff has sufficiently met the *Saucier* requirements for Count V because, as explained further below, Count V is deficient for an entirely separate reason.

12 The Equal Protection Clause requires all states "to treat all persons similarly situated alike or, conversely, to avoid all classifications that are 'arbitrary or irrational' and those that reflect 'a bare . . . desire to harm a politically unpopular group.'" *Glenn v. Brumby*, 663 F.3d 1312, 1315 (11th Cir. 2011) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 446–47 (1985) (internal quotation marks omitted)).

1503 (11th Cir. 1995) (denying qualified immunity for § 1983 claim based on supervisor's knowledge of sexual harassment and discrimination); *Nicholson v. Georgia Dep't of Human Res.,* 918 F.2d 145, 148 (11th Cir. 1990) (no qualified immunity where female employee treated differently solely because of sex). Accordingly, Defendants' Motion, as it relates to Count IV, should be **DENIED**.

### *F. Title IX Claim (Count V) against the Individual Defendants*

In Count V, Plaintiff alleges a section 1983 claim against McWhorter, Hardrick, Schriner, and Rosenberg based on purported violations of Title IX. Defendants argue that Count V is deficient because "Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations." *Williams*, 477 F.3d at 1300 (citing *Hartley,* 193 F.3d at 1270)); *Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015) ("Title IX is enforceable against institutions and programs that receive federal funds, but does not authorize suits against individuals.") (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009)). As such, Defendants argue that Count V must be dismissed because under Eleventh Circuit precedent, "to allow plaintiffs to use § 1983 in this manner would permit an end run around Title IX's explicit language limiting liability to funding recipients." *Williams*, 477 F.3d at 1300.

In Plaintiff's response, he argues that the Eleventh Circuit has not addressed the question presented and that the holding in *Williams* merely constitutes dicta and is a red herring. Plaintiff suggests that the Eleventh Circuit's decision cannot be correct because section 1983 generally provides that a state actor can be held

individually liable for violations of a federal statute. Yet, Plaintiff's arguments are unpersuasive in light of several Eleventh Circuit and Supreme Court decisions that directly foreclose Plaintiff's argument. Those decisions consistently hold that Title IX does not allow claims against individual school officials and that section 1983 cannot be used in a way to skirt around Title IX's explicit language limiting liability to *funding recipients*. Because Plaintiff's argument has been clearly rejected by well-established precedent, Defendants' Motion, as it relates to Count V, should be **GRANTED with prejudice**.

### *G. Defamation Claim (Count VII) against McWhorter and Furton*

In Count VII, Plaintiff alleges a defamation claim against McWhorter and Furton on the basis that they communicated and published certain statements about Plaintiff's sexual misconduct to third parties.[13] These statements have purportedly caused Plaintiff irreparable injury and constitute defamation per se.

Defendants argue that Plaintiff's defamation claim must fail for two separate reasons. First, Defendants contend that under Florida law "[p]ublic officials who make statements within the scope of their duties are absolutely immune from suit for defamation." *Stephens v. Geoghegan*, 702 So. 2d 517, 522 (Fla. DCA 1997) (citing *City of Miami v. Wardlow*, 403 So. 2d 414, 415 (Fla. 1981)). Defendants construe this as an absolute privilege because it purportedly "protects the statements of all public officials, regardless of the branch of government or the level of the official." *Florida State Univ. Bd. of Trustees v. Monk*, 68 So. 3d 316, 319 (Fla.

13 Plaintiff's Complaint alleges that at all times the Individual Defendants acted under color of state law and in furtherance of their official duties as employees or agent of FIU. [D.E. 1 at ¶ 27].

DCA 2011) (citing *Cassell v. India,* 964 So. 2d 190, 194 (Fla. 4th DCA 2007)); *McNayr v. Kelly,* 184 So. 2d 428 (Fla. 1966) (county manager had absolute immunity from libel suit after firing sheriff and supplying county commissioners with a report of the firing). Because Plaintiff alleges that McWhorter and Furton were FUI employees – who acted under the color of state law at all times by Plaintiff's own admission – Defendants argue that both individuals are immune from suit and that their Motion on this basis must be granted.

Second, Defendants contend that, even if Plaintiff could assert a defamation claim against McWhorter and Furton, Plaintiff failed to allege the claim in accordance with *Iqbal* and *Twombly*. In his Complaint, Plaintiff allegedly failed to identify the specifics of any alleged defamatory statements and merely proffered that "[u]pon information and belief, while the investigation into Rivera's complaint against [Plaintiff] was pending, McWhorter [and Furton] made statements which imputed sexual misconduct to [Plaintiff]." [D.E. 1 at ¶¶ 309, 313]. Therefore, Defendants argue that Plaintiff's allegations are insufficient to state a claim and must be dismissed accordingly.

Specifically, Defendants contend that there are four elements of a defamation claim: "1) publication; (2) falsity; (3) defendant must act with knowledge or reckless disregard for the truth if the matter concerns a public official or with negligence if the matter concerns a private person; (4) actual damages; and (5) the statement must be defamatory." *Woodhull v. Mascarella*, 2009 WL 1790383, at *3 (N.D. Fla. June 24, 2009) (citation omitted). Because Plaintiff has purportedly failed to

provide any specifics in support of his defamation claim, Defendants argue that it must be dismissed for failure to state a claim. *See Sarver v. Jackson*, 344 F. App'x 526, 529 (11th Cir. 2009) (finding that "[t]he district court correctly found [that] Sarver failed to state a claim, as her complaint failed to identify any specific written or verbal statements attributed to the defendants" in connection with her state libel, slander, and defamation claims) (citing *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002) (holding conclusory allegations are insufficient to state a claim)); *Morrison v. Univ. of Miami*, 2016 WL 3128604, at *7 (S.D. Fla. Mar. 21, 2016) (finding that "Plaintiff's defamation claim is still defective because she fails to identify the specific statements that relate to her, fails to identify how the statements were false, relies on pure speculation, and fails to allege special damages.").

In response to Defendants' first argument, Plaintiff contends it lacks merit because state law purportedly does not vitiate the more specific allegation in Plaintiff's Complaint that the defamatory statements at issue were made in violation of a duty arising under Title IX not to make such statements. More specifically, Plaintiff contends that the governmental privilege accorded to McWhorter and Furton "extends only to words or acts within the scope of the authority of the public servant." *Mueller v. The Florida Bar*, 390 So. 2d 449, 451 (Fla. DCA 1980) (citing *Ward v. Allen*, 11 So. 2d 193 (Fla. 1942); *Saxon v. Knowles*, 185 So. 2d 194 (Fla. 4th DCA 1966); *Knight v. Starr*, 275 So. 2d 37 (Fla. 4th DCA 1973)). And while Plaintiff concedes that the scope of authority of a public servant

is broadly defined, Plaintiff argues that information disclosed beyond that authority may be actionable if there are rules or laws prohibiting the disclosure of information. *See, e.g.*, *Cassell v. India*, 964 So. 2d 190, 194 (Fla. DCA 2007) ("The term 'duties' is not confined to those things required of the officer, but rather extends to all matters which he is authorized to perform.") (citations omitted). Therefore, Plaintiff argues that the Complaint adequately sets forth sufficient allegations – if accepted as true – that McWhorter and Furton exceeded the scope of their official job duties and defamed Plaintiff.

In *Hauser v. Urchisin,* the Florida Supreme Court explained the basic principles of governmental privilege: "The public interest requires that statements made by officials of all branches of government in connection with their official duties be absolutely privileged." 231 So. 2d 6, 8 (Fla. 1970). The court recognized that democracy requires "free and open explanations" of governmental actions and that the right to an absolute privilege is a necessity for government to function. *See id*. Since *Hauser*, Florida courts have re-affirmed that state law protects "words spoken or written by public servants in judicial, legislative and executive activities" and that they "are protected by absolute privilege from liability for defamation." *Mueller*, 390 So. 2d at 451 (citing *Barr v. Matteo*, 360 U.S. 564 (1959); *McNayr v. Kelly*, 184 So. 2d 428 (Fla. 1966)).

Here, the critical question is whether Plaintiff properly alleged that the communications at issue were made outside the scope of McWhorter's and Furton's official job duties and therefore not absolutely privileged. *See City of Miami v.*

*Wardlow,* 403 So. 2d 414, 416 (Fla. 1981). Specifically, the Complaint alleges that McWhorter communicated statements about Plaintiff's sexual misconduct to "third parties, including Furton" [D.E. 1 at ¶ 310] and that Furton communicated the statements to "third parties, including Northup, and . . . to additional parties." *Id.* at ¶ 314.[14]

Yet, none of Plaintiff's allegations in his Complaint suggest that any of the communications at issue were made outside the scope of either employee's official job duties.[15] Plaintiff merely alleges that statements about Plaintiff's sexual misconduct were communicated between Furton and McWhorter and shared with third parties. Plaintiff never specifies who these third parties might be (perhaps high level personnel responsible for investigating the sexual misconduct of employees) or why the information shared between Furton and Whorter falls outside of their official job duties. Plaintiff also appears to support Defendants' argument with the allegation that "[a]t all times material, the Individual acted under color of state law and in furtherance and fulfillment of their official duties as employees or agent of FIU . . . ." *Id.* at ¶ 27. As such, Plaintiff appears to suggest that McWhorter and Furton acted only in their official capacity when sharing information about Plaintiff's sexual misconduct. As the Complaint stands now,

---

[14] McWhorter has at all times served as FIU's Title IX Coordinator and Director of the Office of Equal Opportunity Programs and Diversity. *Id.* at ¶ 7. And Furton has always served as FIU's Provost, Executive Vice President & Chief Operating Officer. *Id.* at ¶ 8.

[15] It seems perfectly reasonable to expect the Title IX Coordinator of FIU to communicate with the Provost in their official job capacities about the possible misconduct of the university's employees.

there are simply not enough factual allegations – even if accepted as true – to plausibly find that Furton or McWhorter exceeded the governmental privilege that absolutely protects their statements. *See Crowder v. Barbati*, 987 So. 2d 166, 168 (Fla. DCA 2008) ("[T]he act of issuing a press release concerning the official duties of the sheriff was 'within the scope' of the office of the sheriff."); *Knight v. Starr,* 275 So. 2d 37 (Fla. 4th DCA 1973) (affirming the dismissal of a defamation suit against a sheriff because "from the face of the pleading . . . the alleged statements made by the defendant-sheriff were absolutely privileged.").

If Plaintiff intends to state a proper defamation claim, he must clearly set forth sufficient allegations that McWhorter and Furton acted *outside* their official job duties and defamed him because "[p]recedent indicates an inclination to give a broad definition to the term 'scope of office' and its synonyms." *Mueller*, 390 So. 2d at 451 (citing *Densmore v. City of Boca Raton*, 368 So. 2d 945 (Fla. 4th DCA 1979); *Kribs v. City of Boynton Beach*, 372 So. 2d 195 (Fla. 4th DCA 1979)). Accordingly, Defendants' Motion as it relates to Plaintiff's defamation claim (Count VII) against McWhorter and Furton should be **GRANTED without prejudice**.[16]

---

[16] Although the Court will not opine on the merits of Defendants' second defamation argument – that Plaintiff's claim lacks the requisite specificity – Plaintiff should carefully set forth sufficient allegations in any amended Complaint that provides (1) "the identity of the speaker," (2) "the identity of the persons spoken to," "the substance of the statements," "and a time frame when the statements were made." *Woodhull*, 2009 WL 1790383, at *3 (N.D. Fla. June 24, 2009) (citing *Fowler v. Taco Viva, Inc.,* 646 F. Supp. 152, 157–158 (S.D. Fla. 1986)); *Jackson v. North Broward County Hospital,* 766 So. 2d 256, 257 (Fla. 4th D.C.A. 2000). A failure to abide by the aforementioned requirements may subject Plaintiff's defamation claim to another motion to dismiss.

## *IV. CONCLUSION*

For the foregoing reasons, this Court **RECOMMENDS** that Defendants' Motion to Dismiss [D.E. 14] be **GRANTED in part** and **DENIED in part**:

A. Count I (Title IX claim against FIU and the Individual Defendants in their official capacities) and Count V (Title IX claim against the Individual Defendants in their individual capacities) should be **DISMISSED with prejudice**.

B. Count III (Procedural due process claim for deprivation of liberty against the Individual Defendants), and Count VII (Defamation claim against McWhorter and Furton) should be **DISMISSED without prejudice**. Any amended Complaint should be filed within twenty-one (21) days.

C. As for Counts II (Procedural due process claim for deprivation of property against the Individual Defendants), IV (Equal protection claim against the Individual Defendants), and VI (Title VII claim against FIU), Defendants' Motion should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir.

Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of June, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge