UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 16-24939-CIV-WILLIAMS

ADAM DRISIN,

      Plaintiff,

vs.

THE FLORIDA INT'L UNIVERSITY
BOARD OF TRUSTEES, *et al.*,

      Defendants.

_____/

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court on the Florida International University Board of

Trustees' ("FIU"), Shirlyon McWhorter's ("McWhorter"), Brian Schriner's ("Schriner"), and

Jaffus Hardrick's ("Hardrick") (collectively, "Defendants") Motion for Summary Judgment

(DE 70).  Plaintiff Adam Drisin ("Plaintiff") responded (DE 73); Defendants replied (DE

78).  For the reasons set forth below, Defendants' Motion is **GRANTED**.

### I.     BACKGROUND[1]

Plaintiff brings three claims against Defendants for violating his rights under Title

VII of the Civil Rights Act of 1964 and pursuant to 42 U.S.C. § 1983 for violating his

Constitutional rights to due process and equal protection.  Plaintiff brings these claims

based on Defendants' termination of Plaintiff as a professor in FIU's College of

Architecture and the Arts (the "College").

---

[1] This section includes the relevant admitted facts for purposes of summary judgment.  In their respective statements of material facts, the parties make various assertions that are supported by the record.  In some instances, the parties did not contest their adversary's assertions or the parties contested assertions without citing sufficient materials in the record.  The Court deems all of those uncontested—or insufficiently contested—factual assertions to be admitted.  *See* S.D. Fla. L. R. 56.1(b); Fed. R. Civ. P. 56(c), (e).

### A. <u>Study Abroad Program and Alleged Sexual Assault</u>

Plaintiff began working as a tenured professor and director of FIU's architecture program in 2004.   [Def.'s Statement of Material Facts ("DSMF"), DE 71 ¶ 1].   Plaintiff became an Associate Dean of the College in 2011 and, in 2013, he was appointed Senior Associate Dean of the College.  *Id.*

Architecture students at FIU can choose to participate in a semester-long study abroad program in Genoa, Italy.  *Id.* ¶ 3.  Andrea Rivera ("Rivera") was a graduate student in the College who participated in the Genoa program in 2014.  *Id.* ¶ 8.  Larisa Sherbakova ("Marenco")[2] *was also a graduate student in the College who participated in the same study abroad program.*  *Id.* ¶ 2; Pl. Dep. 10:14-21; 12:16-19.  On December 12, 2014, Plaintiff flew to Genoa in his capacity as Associate Dean because some students in the program were experiencing problems with a professor related to their grades.  *Id.* ¶ 6; Pl. Dep. 19:18-20.  On the evening of December 12, 2014, several students and faculty members from FIU, including Plaintiff and Rivera, had dinner and drinks.  DSMF ¶ 7; Pl. Dep. 28:6-10; 28:11-29:4.  Afterward, three female students, including Rivera, Marenco, and a third FIU student, Lorena Behamon, accompanied Plaintiff to his apartment.  DSMF ¶ 8; Pl. Dep. 29:5-8.  They gathered in Plaintiff's bedroom, where they talked and eventually fell asleep.  *Id.* ¶ 8.

The following day, Marenco advised Plaintiff that Rivera had contacted someone at FIU to complain that Plaintiff had had nonconsensual sexual contact with her while she was in his room the night before.  DSMF ¶ 8; Pl. Dep. 30:1-24; 40:23-41:23.  In fact, it was a few days later when Rivera reported to McWhorter that the group had been drinking

---

[2] At the time she was enrolled in the program, Larisa Sherbakova was married and was known by the name Larisa Marenco.  DSMF ¶ 2.  Thus, she will be identified as "Marenco" throughout this Order.

all night, that Plaintiff had offered the three students more alcohol in his apartment, and that she thought that Plaintiff may have put something in her drink because she was "so out of it." DSMF ¶ 8; McWhorter Dep. 42:8-43:7. According to McWhorter, Rivera also stated that when she woke up the following morning, her clothes had been removed and Marenco told her that she had seen her having sex with Plaintiff. DSMF ¶ 8; McWhorter Dep. 39:4-40:2; Ex. 5. McWhorter also testified that Rivera had told her that "she was wearing a tampon and that she could tell that it had been forcefully pushed back." DSMF ¶ 8; McWhorter Dep. 41:3-5; Ex. 5. These statements—made by Rivera to McWhorter during the course of FIU's investigation of Rivera's complaint—are all reflected in the investigative report issued by McWhorter on July 8, 2015. McWhorter Dep. Ex. 13 at 284-97.

Rivera and Plaintiff had never met prior to the day of the incident, and Rivera had never been his student. DE 58 at 1-2; DE 74-1 at 248. Marenco, however, who was one of Rivera's roommates in Genoa, had known Plaintiff since her second or third year at FIU's architecture school. Marenco Dep. 10:24-25; 11:1-2. Both Plaintiff and Marenco, during their sworn depositions, described their relationship as "professional" and "friendly." DSMF ¶ 4; Marenco Dep. 12:9-11; Pl. Dep. 14:10-11. Both were married during the course of their professor-student relationship at FIU. Marenco Dep. 8:8-18; Pl. Dep. 8:9-20. During each of their depositions, Plaintiff and Marenco were shown an email that Plaintiff had sent to Marenco in October 2014, two months before the incident at issue. The email stated, among other things, "I wish you were having dreams about kissing me instead of kissing your piggy roommate" and "Miss you! The photos of you on facebook from the last day in Florence are great. You look happy! They made me miss

you when I looked at them." Pl. Dep. Ex. 1.  When asked whether he considered the email to be friendly and professional, Plaintiff stated yes and that it was also "flirtatious." Pl. Dep. 15:21-16:6.  Marenco similarly characterized her relationship with Plaintiff as "flirtatious."  Marenco Dep. 12:21-23.  In another email sent by Plaintiff to Marenco in January 2015, two days after the two had gone to lunch together, Plaintiff described an "erotic dream" that he characterizes as very "graphic and sexual."  Marenco Dep. 32: 10-11; Pl. Dep. 58:4-8, Ex. 9.  Before explicitly describing his dream, where he and Marenco have sex, Plaintiff states in the email that "I thought you looked lovely on Friday at lunch . . . and I thought the jacket that you were wearing with no shirt underneath was so f---ing sexy . . . Seeing the curve of your breasts revealed by your jacket was such a wonderful distraction that it left me totally aroused from our lunch. I just wanted to slip my hand inside your jacket." Pl. Dep. Ex. 9.

After Marenco had returned from Genoa, she was selected by Plaintiff and other FIU faculty for a paid graduate assistant position related to a project that Plaintiff had created.  DSMF ¶ 17; Pl. Dep. 11:14-23; 12:6-10.  Plaintiff was Marenco's direct supervisor in that position.  DSMF ¶ 17; Marenco Dep. 11:19-21.  In February 2015, Marenco's husband (at the time) filed a complaint against Plaintiff with FIU's Department of University Compliance and Integrity alleging that Plaintiff was having an affair with his wife and provided emails between Plaintiff and Marenco from her computer.  DSMF ¶ 20; Pl. Dep. 56:12-17; 66:11-25.  As a result of that investigation, Marenco was removed as Plaintiff's direct report.  DSMF ¶ 20; Pl. Dep. 68:1-69:9.

### B. Title IX Investigations

Rivera initially reported the alleged sexual assault to someone in McWhorter's office on December 16, 2014.  DSMF ¶ 13; McWhorter Depo. 36:9-37:7; Ex. 5.  Rivera

eventually filed a formal sexual misconduct complaint with FIU against Plaintiff on April 1, 2015.  DE 58 at 21.  McWhorter began working at FIU in 2010 as Director for Equal Opportunity Programs and Diversity ("EOPD").  DSMF ¶ 12; McWhorter Dep. 10:5-15. As a subset of her responsibilities as Director of the EOPD, McWhorter was FIU's Title IX Coordinator.  DSMF ¶ 12; McWhorter Dep. 10:16-19.  At the time of the relevant events, McWhorter reported to the Vice President of Human Resources, Hardrick.  DSMF ¶ 12; McWhorter Dep. 15:6-10.  In response to Rivera's allegations and the complaint, McWhorter conducted a seven-month long investigation, which included collecting evidence, interviewing at least ten witnesses, and drafting an investigative report outlining the findings and conclusions of the investigation.  McWhorter Dep. 70: 19-23; 71:5-9.  As part of the investigation, McWhorter interviewed Plaintiff on May 7, 2015.  DSMF ¶ 24; Pl. Dep. 31:11-15.

During the course of the investigation, Plaintiff told McWhorter that once he and the students arrived at his apartment, he, Marenco and Rivera had a conversation for about 45 minutes.  After the end of the conversation, Plaintiff started working on his notepad and, while lying on the bed, fell asleep.  DSMF ¶ 25; Pl. Dep. 31:25-32:11. Although the witnesses do not agree on a timeline, all agree that at some point that night, all four people—Plaintiff, Rivera, Marenco, and Behamon—were together in Plaintiff's bed.

Plaintiff stated that, sometime later that night or early in the morning, he awoke fully clothed and realized that Rivera was kissing him.  DSMF ¶ 25; Pl. Dep. 32:12-22; Marenco Dep. 48:2-3.  Plaintiff also told McWhorter that, while Rivera was kissing him, she unbuttoned his jeans and fondled him, making him aroused.  DSMF ¶ 25; Pl. Dep.

33:7-12.  Plaintiff stated that he heard Marenco asking Rivera whether she was enjoying herself and whether it felt good.  DSMF ¶ 25; Pl. Dep. 33:13-22; Marenco Dep. 48:2-3. He also stated that after he eventually became more conscious of what was happening and realized that Rivera was on top of him, he pushed Rivera off and got out of bed. DSMF ¶ 25; Pl. Dep. 33:23-34:10.

McWhorter's investigation culminated in a final report dated July 8, 2015 that summarized the investigation's findings and found that Plaintiff had engaged in sexual misconduct based on the December 12, 2014 alleged sexual assault.  DSMF ¶ 29; Pl. Dep. 83:6-84:6;  Ex. 16.   Plaintiff appealed those findings through FIU's internal procedures in a letter dated July 16, 2015.  DSMF ¶ 30; Pl. Dep. 91:15-24; Ex. 19.  In his letter of appeal, Plaintiff challenged the investigation's conclusions, but did not request any type of hearing.  *See* Pl. Dep. Ex. 19.  Plaintiff was advised in a letter from Hardrick dated July 30, 2015 that Plaintiff's appeal was denied after Hardrick had thoroughly reviewed the record and found McWhorter's findings in the July report to be supported by the evidence.  DSMF ¶ 30; Pl. Dep. 92:5-20; Ex. 20.

On July 10, 2015, Plaintiff filed a complaint of sexual misconduct against Rivera based on the same events that occurred on December 12, 2014 in Genoa.  DSMF ¶ 35; Pl. Dep. 87:17-25; 99:8-12. McWhorter investigated Plaintiff's allegations and concluded, in a report dated September 10, 2015, that his complaint was unsubstantiated.  DSMF ¶ 35; Pl. Dep. 99:3-13; Ex. 24.  On September 30, 2015, Plaintiff, through counsel, appealed those findings.  DSMF ¶ 36; Pl. Dep. 102:1-18; Ex. 27.  In a letter from Hardrick dated October 20, 2015, FIU denied Plaintiff's appeal and ratified the findings and conclusions of the September 10, 2015 report.  DSMF ¶ 36; Pl. Dep. 102:19-103:25; Ex. 28.

## C. Plaintiff's Termination

After Plaintiff's appeal of the report related to Rivera's complaint was denied in July 2015, FIU began the formal process of terminating Plaintiff's employment.  On August 17, 2015, Plaintiff was provided with written notice that FIU intended to terminate his employment due to sexual misconduct.  DSMF ¶ 32; Pl. Dep. 93:21-94:12; Ex. 21.  The August 17, 2015 letter states that Schriner had determined that Plaintiff's behavior was in violation of FIU's policy on sexual harassment and adversely affected the legitimate interests of FIU.  DSMF ¶ 33; Schriner Dep. 63:7-12; Ex. 9.  In his letter, Schriner also sets forth his conclusions that: (1) the earlier determinations of misconduct were substantiated; (2) Plaintiff had engaged in sexual intercourse with a student who was not aware that she was engaging in sexual intercourse (because she was impaired), and; (3) Plaintiff's conduct therefore violated the legitimate interests of FIU.  DSMF ¶ 33; Schriner Dep. 63:21-64:9.  On September 11, 2015, FIU sent Plaintiff another letter stating that, in accordance with the August 17, 2015 letter, his employment would be terminated effective September 14, 2015.  DSMF ¶ 37; Pl. Dep. Ex. 21.

Plaintiff, through counsel, filed a grievance under the collective bargaining agreement, contending that his termination was without just cause and seeking reinstatement, back wages and lost benefits.  DSMF ¶ 38; Pl. Dep. 104:6-22; Ex. 29.  In connection with that grievance, Plaintiff and his lawyer met with Elizabeth Behar, FIU's Vice President for Academic Affairs.  DSMF ¶ 38; Pl. Dep. 105:15-21.  In a letter dated January 15, 2016, Behar advised Plaintiff that she had reviewed his grievance, the university records pertaining to the issues raised in the grievance, and the statements made at the meeting between the parties.  DSMF ¶ 38; Pl. Dep. 105:15-106:15; Ex. 30.

Behar affirmed FIU's decision to dismiss him and found his dismissal to be for just cause and in accordance with the collective bargaining agreement.  *Id.*  Plaintiff's counsel responded that Plaintiff was going to pursue arbitration as permitted by the collective bargaining agreement.  DSMF ¶ 38; Pl. Dep. 106:19-107:7; Ex. 31.  Although Plaintiff initiated arbitration, he later abandoned it to pursue this lawsuit.  DSMF ¶ 38; Pl. Dep. 107:8-10; Hardrick Dep. Ex. 8.

### D. EEOC Charges

On July 7, 2016, 325 days after receiving FIU's letter informing Plaintiff of his termination, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") arising out of his termination.  DSMF ¶ 39; Pl. Dep. 113:14-114:1; 114:17-20; Ex. 33.  On August 22, 2016, the EEOC issued Plaintiff a "Notice of Right to Sue" letter, (DE 58 at 4-5, Ex. 1), and on November 28, 2016, Plaintiff filed this suit against Defendants.  (DE 1).

### II.   LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide

8

whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 592-94 (1986)).

## III.    DISCUSSION

Plaintiff alleges the following causes of action in his third amended complaint: (1) a claim for gender discrimination under Title VII against FIU, (2) a Section 1983 procedural due process claim against Schriner, and (3) a Section 1983 equal protection claim against McWhorter, Hardrick, and Schriner.  (DE 58 at 2).

### A. Title VII Claim Against FIU

Title VII makes it unlawful for employers to discharge or otherwise discriminate against an employee because of his or her race, sex, or national origin.  42 U.S.C. §

2000e-2(a)(1).  Title VII also makes it unlawful to retaliate against an employee because she has opposed any employment practice that is prohibited by Title VII.  *Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir. 2008).  In a Title VII case, a plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination.  *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993) (citations omitted).  If a *prima facie* case is established, the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against him or her.  *Id.*  The burden then shifts to the employer to state a legitimate, nondiscriminatory reason for the challenged employment action.  *Id.* at 507.  If the employer satisfies the burden of production, the burden shifts back to the plaintiff to demonstrate that the proffered reason is merely a pretext for unlawful discrimination.  *Id.* at 515.  Although the burden of production shifts back and forth, the ultimate burden of persuasion remains with the plaintiff.  *Id.* at 507.

### 1.  Plaintiff Failed to Exhaust His Administrative Remedies

Defendants argue that Plaintiff's Title VII claim of gender discrimination—against FIU—based on disparate treatment fails first and foremost because Plaintiff failed to exhaust his administrative remedies.  It is well established that a plaintiff must first exhaust his or her administrative remedies before filing suit under Title VII.  *See H&R Block E. Enterps., Inc. v. Morris*, 606 F.3d 1285, 1295 (11th Cir. 2010) (citing *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001)).

In Florida—a deferral state—"[a] plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission . . . within 300 days of the discriminatory act, at the latest."  *Cabrera-Rodriguez v. Sch. Bd. of Miami-Dade Cty.*, Fla., 2013 WL 1962996, at *2 (S.D. Fla. May 10, 2013) (citing *Maynard v. Pneumatic Prods. Corp.*, 256

F.3d 1259, 1262 (11th Cir. 2001)); *see also E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) ("For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act" and "only those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable.") (internal citations omitted) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Taylor v. Hudson Pulp & Paper Co.*, 788 F.2d 1455, 1458 (11th Cir. 1986)).  A plaintiff's failure to timely file his or her charge renders the claims at issue time barred. *See Clarke v. Winn-Dixie Stores, Inc.*, 2007 WL 3011018, at *3 (S.D. Fla. Oct. 12, 2007).

Defendants argue that Plaintiff failed to timely file his EEOC charge because the time to do so began to run when Plaintiff was advised in writing on August 17, 2015 that his employment was being terminated due to sexual misconduct, (DE 70 at 3), and it is undisputed that Plaintiff did not file his EEOC charge until July 7, 2016, approximately 325 days later. *Id.*  Because an adverse employment action occurs when an employer makes a final decision and communicates it to the employee, Defendants contend that Plaintiff's EEOC charge is untimely as a matter of law and therefore summary judgment in Defendants' favor on this claim is appropriate. *See Thomas v. CVS/Pharmacy*, 336 F. App'x 913, 915 (11th Cir. 2009) ("An adverse employment action is deemed to have occurred when the employer made the final decision and communicated it to the employee.") (citation omitted).  The August 17, 2015 notice of intent to terminate states that Plaintiff should "consider this letter as notification of the University's intent to dismiss you from your position as associate professor. The reason for this action is misconduct as described below."  (DE 14-1).  The letter describes Plaintiff's sexual misconduct with Rivera and includes a copy of FIU's investigative report.  *Id.*  The letter concludes by

stating that "[b]ased on the findings contained in the report, I have concluded that there is just cause to terminate your employment." *Id.*

Defendants rely on the Supreme Court's decision in *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980), for the proposition that whether a plaintiff's actual termination date occurs later than a termination notice is immaterial to determining when a limitations period begins:

> In sum, the only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to Ricks. That is so even though one of the effects of the denial of tenure—the eventual loss of a teaching position—did not occur until later. The Court of Appeals for the Ninth Circuit correctly held, in a similar tenure case, that "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (1979) (emphasis added); *see United Air Lines, Inc. v. Evans*, 431 U.S., at 558 . . . We conclude for the foregoing reasons that the limitations periods commenced to run when the tenure decision was made and Ricks was notified.

*Id.* at 258-59 (internal footnote omitted). The Supreme Court also added that a professor's pursuit of a grievance, "or some other method of collateral review of an employment decision does not toll the running of the limitations period[]" because the "limitations period normally commence[s] when the employer's decision is made." *Id.* at 261; *see also Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 234-35 1976 ("Unless the grievance procedures resulted in her reinstatement, she would not be entitled to be paid for the period during which the grievance procedures were being implemented."); *Liu v. Univ. of Miami*, 138 F. Supp. 3d 1360, 1370 (S.D. Fla. 2015) ("[T]he filing limitations period commences at the time the

termination decision is made and communicated to Plaintiff even though the last date of employment does not occur until later.") (citing *Ricks*, 449 U.S. at 258).

Defendants further argue that this principle has been applied numerous times in the university context where professors are typically provided advance notice of an upcoming termination. *See Liu*, 138 F. Supp. 3d at 1370 ("[S]ince Plaintiff was advised in writing on October 7, 2011, that her employment would be terminated, any charge of discrimination with the EEOC had to be filed within 300 days of that notification (on or before August 2, 2012) . . . Plaintiff did not file her charge until March 21, 2013."); *see also Nichols v. Muskingum Coll.*, 318 F.3d 674, 676-77 (6th Cir. 2003) (finding that a Title VII claim was timely because the professor filed her charge 295 days after she received the notification of non-renewal); *Ode v. Omtvedt*, 883 F. Supp. 1308, 1316 (D. Neb. 1995) ("[T]he time for filing the EEOC charge began to run when [the professor] was unambiguously notified in writing in June, 1992, that his contract would not be renewed"), *aff'd*, 81 F.3d 165 (8th Cir. 1996); *George v. Kan. State Univ.*, 1991 WL 286915, at *1 (D. Kan. Dec. 4, 1991) (finding that a professor was required to file his EEOC charge within 300 days after he was advised his contract would not be renewed (internal citations omitted)).

Plaintiff responds that the time to file an EEOC charge did not commence until Plaintiff received another letter on September 11, 2015 stating that his employment would be terminated effective September 14, 2015.[3]  (DE 73 at 7).  Plaintiff argues that the August 17, 2015 letter could not have been the final notice or decision from FIU because

---

[3] The September letter states that "[t]he final determination is that competent, substantial evidence supports the finding that you engaged in sexual misconduct in violation of the University policy on sexual harassment" and that "[y]our misconduct warrants the immediate termination of your employment."  (DE 58 at 47-48).

Plaintiff had the right to respond to that letter within ten days.  Thus, Plaintiff claims that his EEOC charge is timely because it was filed within 300 days of the final letter terminating his employment.[4]

Thus, whether Plaintiff exhausted his administrative remedies turns on which letter started the clock for Plaintiff to file an EEOC charge.  If the time began to run from the August 17, 2015 notice of termination, there is no dispute that Plaintiff's claim is time-barred and summary judgment in favor of Defendants must be entered on this claim.  Two elements are necessary to determine the date on which an adverse employment action occurred.  "First, there must be a final, ultimate, non-tentative decision to terminate the employee" and "[s]econd, the employer must give the employee 'unequivocal' notice of its final termination decision."  *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) (citing *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 486 (7th Cir. 2002)).  Both elements are generally necessary to start the limitations period as neither alone is sufficient.  *See Flannery*, 354 F.3d at 637.

Although the August 17, 2015 letter states that Plaintiff may respond in writing within ten calendar days, the record demonstrates that the purpose of the response was to allow for an appeal process, rather than to give Defendant an opportunity to reverse FIU's decision to terminate him.  Schriner testified that the language allowing the response is derived from the collective bargaining agreement.  Schriner Dep. 65:5-7. Schriner also testified that "the collective bargaining agreement gives him or anyone that right to appeal that decision by . . . presenting additional evidence that was not in the

---

[4] Plaintiff also contends that the August 17, 2015 notice of intent to terminate Plaintiff's employment was tentative, rather than final, because the August letter did not provide an exact date upon which Plaintiff's employment would terminate.  (DE 73 at 7).

original findings." *Id.* 65:12-19.  While Plaintiff may have had the opportunity to appeal FIU's decision to terminate him, the Supreme Court has made it clear that such an appeal or grievance process does not toll the time to file an EEOC charge. *See Ricks*, 449 U.S. at 261; *see also Liu*, 138 F. Supp. 3d at 1370 ("[T]he filing limitations period commences at the time the termination decision is made and communicated to Plaintiff even though the last date of employment does not occur until later.") (citing *Ricks*, 449 U.S. at 258).

Although Judge Torres found that the facts alleged at the motion to dismiss stage of the ligation permitted the conclusion that either the August 17 or the September 11 letter could be the operative date for Plaintiff's termination, (DE 25 at 24), the Court— having had the benefit of the Parties' discovery findings and the opportunity to review a more fulsome record of the facts related to the two letters—now finds that the August 17, 2015 letter provided Plaintiff with unequivocal notice of his termination. *See Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 288 (7th Cir. 1986) ("[U]nder *Ricks* and its progeny unequivocal notice of termination is all that is required to start the limitations period running.") (citations omitted).  Therefore, Plaintiff failed to timely file his EEOC charge and his claim is barred for failure to exhaust his administrative remedies.

### 2. Plaintiff Fails to Establish a *Prima Facie* Case of Discrimination

Nonetheless, the Court has thoroughly reviewed the Parties' briefs and the record and finds that, even if Plaintiff's Title VII claim was timely filed, his claim also fails on the merits.  "A plaintiff may establish a Title VII claim by presenting direct evidence of discrimination, or circumstantial evidence that creates an inference of discrimination." *Tseng v. Fla. A&M Univ.*, 380 F. App'x 908, 909 (11th Cir. 2010).  Where, as here, an

employee bases his discrimination claim on circumstantial evidence,[5] courts apply the *McDonnell Douglas* burden-shifting framework. *Giles v. Daytona State Coll., Inc.*, 542 F. App'x 869, 872 (11th Cir. 2013).

Under the *McDonnell Douglas* burden-shifting framework, an employee must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a *prima facie* case, the burden is on the plaintiff to show: (1) he belongs to a protected class; (2) he is qualified to perform the job; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the employee's protected class more favorably. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); *see McDonnell Douglas*, 411 U.S. at 802. If the plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the employer to show legitimate, nondiscriminatory reasons for the adverse employment action. *Holifield*, 115 F.3d at 1564. If the employer meets this burden, the burden then shifts back to the plaintiff to present "significantly probative evidence showing that the asserted

---

[5] Plaintiff purports to base his claim on both direct and circumstantial evidence; however, the "direct evidence" he alleges does not constitute "direct evidence" under Eleventh Circuit precedent and is therefore insufficient as a matter of law. *See, e.g.*, *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) ("Evidence that only suggests discrimination, or that is subject to more than one interpretation, does not constitute direct evidence."); *see also Mathis v. Wachovia Bank*, 255 F. App'x 425, 429 (11th Cir. 2007) (*per curiam*) ("[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate satisfy this definition.") (internal quotations omitted).

First, Plaintiff contends that because McWhorter investigated both Rivera's and his Title IX complaints against one another, and did not recuse from investigating his complaint, there was a conflict of interest that purportedly serves as direct evidence of FIU's and McWhorter's discriminatory intent. Plaintiff provides absolutely no legal basis for this argument and the Court can find none. Second, Plaintiff presents "tweets" from McWhorter's twitter account containing statistics on sexual assault—including one that reads "The average girl is raped 7-20 times a day five days a week. It is not voluntary. #humantrafficking #fiuwesley #fiudiversity #FIU". (DE 79-1 at 7-8). The record is clear, from both the text of the tweets (Plaintiff inexplicably omits the hashtags) and McWhorter's sworn declaration, (DE 79-1 at 3), that this statistic was in the context of a human trafficking awareness event that FIU hosted on January 26, 2016, the day of the tweets. The Court finds Plaintiff's representation of the tweets as "hyperbolic trumpeting of female victimization" constituting "direct evidence of McWhorter's inability both to maintain the neutrality required of a Title IX Coordinator and to distinguish between a bona fide claim of sexual misconduct and an apocryphal one" to be not only frivolous, but also misleading. (DE 73 at 13).

[nondiscriminatory] reason is merely a pretext for discrimination." *Underwood v. Perry County Comm'n*, 431 F.3d 788, 794 (11th Cir. 2005).

To meet the "comparator" element of a disparate treatment claim, a plaintiff must "show he is similarly-situated in all relevant respects to those employees." *Id.* (citation omitted); *see also Woods v. Cent. Fellowship Christian Acad.*, 545 F. App'x 939, 945 (11th Cir. 2013) ("When a Title VII plaintiff attempts to show discriminatory intent by pointing to non-protected class members treated differently, the proffered comparator 'must be nearly identical to the plaintiff.'") (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004)). More specifically, "the individuals with whom plaintiff seeks to compare himself must have: (1) dealt with the same supervisor, (2) been subject to the same standards, and (3) engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Sanguinetti v. United Parcel Serv., Inc.*, 114 F. Supp. 2d 1313, 1317 (S.D. Fla. 2000), *aff'd*, 254 F.3d 75 (11th Cir. 2001) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *Patterson v. Wal-Mart Stores, Inc.*, 1999 WL 1427751, *8 (M.D. Fla. Dec. 22, 1999)); *see also Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) ("[T]he plaintiff must show that he and the employees are similarly situated in all relevant aspects.") (citing *Mitchell*, 964 F.2d at 583).

For purposes of summary judgment, Defendants concede that (1) Plaintiff belongs to a protected class; (2) he was subjected to an adverse employment action; and (3) he was qualified to do his job.  (DE 70 at 7).  Thus, in order to survive Defendants' motion for summary judgment, Plaintiff must demonstrate that there is an issue of material fact as to the remaining element of a *prima facie* discrimination case: that FIU, his employer,

treated similarly situated employees outside of his protected class (*i.e.*, women) more favorably.  Plaintiff has failed to do so.

Defendants argue that the only comparator identified by Plaintiff is Rivera, a graduate student.  The Court agrees with Defendants' contention that Rivera is not a plausible comparator because a university dean and professor is not "similarly situated" to a graduate student, the most obvious disparity being that a student is not an employee. It is undisputed that Plaintiff was formerly employed by FIU as a professor and associate dean of the College, and participated as a senior administrator in a study abroad program. Because Rivera was a graduate student participant in a study abroad program—and not an employee—the Court finds that the two could never be "similarly situated" as a matter of law.[6]  *See Holifield*, 115 F.3d at 1562 ("[T]he plaintiff must show that he and the [comparator] employees are similarly situated in all relevant aspects.") (citing *Mitchell*, 964 F.2d at 583).

The only comparator that Plaintiff identifies in his operative complaint is Rivera, who Plaintiff concedes was a graduate student and not an employee.[7]  The allegations in

---

[6] As Judge Torres noted in his Report and Recommendation, Plaintiff does not present—and the Court has not found—any case where a comparator suggested by an employee/professor was a student, or even where the proffered comparator was anyone besides another employee.  Likewise, Plaintiff presents no legal support for the contention that Rivera is a proper comparator because she and Plaintiff were governed by the same code of conduct and subject to the same standards of investigation for Title IX complaints.

[7] Plaintiff presents a female FIU professor as an additional alleged comparator for the first time in his response to Defendants' motion for summary judgment.  (DE 73 at 18).  Even if the Court were to consider this new, untimely argument—which it need not—the female professor presented by Plaintiff is not a similarly situated employee for purposes of Plaintiff's Title VII claim.  *See, e.g.*, *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312 (2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.") (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir.1996)).  The record demonstrates that the female professor was not accused of similar conduct, as required to constitute a valid comparator.  McWhorter submitted a sworn declaration stating that "none of the other Title IX complaints were premised on allegations of sexual assault" similar to the charge against Plaintiff.  (DE 79-1 at 2).  McWhorter's declaration is accompanied by an exhibit "outlining all of the Title IX complaints that have been filed with and investigated by the EOPD involving a faculty or staff member between December 2012 and August 2017."  *Id.*  Even Plaintiff's counsel's sworn declaration, which includes documents related to the alleged comparator, do not support his argument.  (DE 74-7 at 44-47).  These documents show that

Plaintiff's complaint also make clear that his Title VII claim is based on a theory of disparate treatment which requires, under Eleventh Circuit precedent, a comparator "to satisfy [the] burden of establishing a prima facie case of disparate treatment." *Gilmore v. Nat'l Mail Handlers Union Local 318*, 517 F. App'x 784, 787 n.2 (11th Cir. 2013); *see also Stone & Webster Const., Inc. v. U.S. Dep't of Labor*, 684 F.3d 1127, 1135 (11th Cir. 2012) ("When evaluating an allegation of disparate treatment, we require that a comparator be "'similarly situated to the plaintiff in all relevant respects.'") (quoting *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1280 (11th Cir. 2008) (internal quotation marks and alterations omitted)).

Because a comparator must be "nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer," Plaintiff's comparison to a graduate student is insufficient as a matter of law to succeed on a claim of disparate treatment under Title VII. *See Wilson*, 376 F.3d at 1091; *see also Stallworth v. Okaloosa Cty. Sch. Dist.*, 2011 WL 4552187, at *9 (N.D. Fla. Sept. 30, 2011) ("A relevant comparator must be an employee") (emphasis added) (citing *Wilson*, 376 F.3d at 1091). Thus, the Court finds that even if Plaintiff's claim were not barred for failure to timely exhaust his administrative remedies, Plaintiff's failure to provide a valid comparator nonetheless renders his Title VII cause of action defective and therefore summary judgment for Defendants is appropriate.

---

the student's charge against the professor was based on allegations that the professor "claimed to have feelings for [the student] on several occasions" and continued texting the student after the student had stated that he "did not share these feelings." *Id.* at 44. Thus, Plaintiff's own record evidence demonstrates that this female professor is not, as a matter of law, similarly situated to Plaintiff, who was charged with sexually assaulting an incapacitated student. Moreover, as a result of her conduct, the matter was investigated and the female professor was placed on probation for six months and required to attend both sexual harassment training and counseling. *Id.* at 46.

### 3. Plaintiff Fails to Present Evidence that FIU's Proffered, Non-discriminatory Reason for His Termination is Pretextual

Plaintiff also argues that, even if he failed to allege a proper comparator, he presented a "mosaic" of circumstantial evidence and statistical facts to create at least an inference of gender discrimination.  Plaintiff is correct that he may raise a reasonable inference of an employer's discriminatory intent through various forms of circumstantial evidence, even in the absence of a proper comparator, to survive a motion to dismiss. However, more is necessary to survive at the summary judgment stage.  *See Rioux*, 520 F.3d at 1281 (holding that the plaintiff established a *prima facie* case of racial discrimination when he did not present evidence of a comparator but presented other circumstantial evidence that was sufficient); *see also Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (stating that the circumstantial evidence necessary to present a Title VII case of discrimination under *McDonnell Douglas* is "flexible and depend[s] on the particular situation" (citations omitted)); *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1325 (11th Cir. 2006) (affirming the district court's grant of summary judgment because plaintiff "failed to establish valid comparators and presented no other circumstantial evidence suggesting racial discrimination" (emphasis added)).

Plaintiff can survive summary judgment only by presenting "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F. 3d 1321, 1328 (11th Cir. 2011).  Such "[a] triable issue exists if the record, viewed in a light most favorable to the plaintiff, presents a 'convincing mosaic' of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.*  "However, courts require more than marginal

evidence to satisfy the convincing mosaic standard." *Jones v. McDonald*, No. 17-20153-CIV, 2018 WL 3629592, at *6 (S.D. Fla. June 12, 2018) (internal citations omitted). "Rather, where no 'comparators' exist, the plaintiff must present evidence suggesting discrimination 'with force similar to that implied by treating nearly identical offenders differently.'" *Id.* (quoting *Bell v. Crowne Mgmt., LLC*, 844 F. Supp. 2d 1222, 1233-34 (S.D. Ala. 2012)); *see also El-Saba v. Univ. of S. Ala.*, No. 16-17199, 2018 WL 2974418, at *6 (11th Cir. June 13, 2018) (finding that a plaintiff's "failure to rebut the University's asserted legitimate, nondiscriminatory reason for his termination is fatal to his 'convincing mosaic' theory [because] [n]o reasonable jury would find that he was terminated due to intentional discrimination").

Here, Plaintiff has adduced no evidence to support a reasonable inference that FIU engaged in intentional gender discrimination or to rebut FIU's proffered legitimate, non-discriminatory reason for terminating Plaintiff's employment—that he had engaged in sexual misconduct.  Plaintiff relies solely on his own assertions that FIU's investigation was flawed and that McWhorter made credibility determinations with which he does not agree.  Plaintiff's contention that this Court should apply "the standard for an erroneous outcome challenge in a Title IX case" in assessing whether he has presented a convincing Title VII mosaic claim is incorrect as a matter of law.  (DE 73 at 10).  As Judge Torres noted in his Report and Recommendation dismissing with prejudice Plaintiff's Title IX claim, which this Court adopted in full, "Plaintiff's Title VII claim preempts his Title IX claim" because "the allegations that underlie his Title IX claim are the same allegations that underlie his Title VII claim."  (DE 25 at 17-18).  Although Plaintiff insists that the Court should delve into the "procedural flaws in the investigatory and adjudicative processes,"

there is no legal basis for doing so because the Title IX claim has been appropriately dismissed with prejudice.  (DE 73 at 11).

Moreover, even in the context of the correct Title VII analysis, Plaintiff's conclusory disagreement with the result of the Title IX investigation does not, as a matter of law, meet the "convincing mosaic" evidentiary standard.  Plaintiff has failed to present any evidence—much less create a genuine issue of material fact—that would amount to "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith*, 644 F. 3d at 1328.  Where, as here, the record does not present such evidence, summary judgment in favor of the employer is appropriate. *Duncan v. Alabama*, 734 F. App'x 637, 640 (11th Cir. 2018); *see also Mojica v. Fla. Dept. of Revenue*, 704 F. App'x 834 (11th Cir. 2017) (affirming summary judgment in favor of employer because the plaintiff "failed to present a genuine issue of material fact indicating that a 'convincing mosaic' of circumstantial evidence has raised a reasonable inference that the [employer] intentionally discriminated against him"); *King v. Ferguson Enterps.*, 568 F. App'x 686, 689 (11th Cir. 2014) (same).

To summarize the Court's findings, Plaintiff's Title VII claim is time-barred because he failed to timely exhaust his administrative remedies by filing a charge with the EEOC 25 days after the deadline to do so.  Even if Plaintiff's Title VII claim were not time-barred, Plaintiff has failed to present a *prima facie* case of gender discrimination because there is no record evidence that similarly-situated employees outside of his protected class were treated more favorably than him.  Finally, even if Plaintiff had made out a *prima facie* case of gender discrimination against FIU, his claim would nonetheless fail because the record is devoid of any evidence to rebut FIU's proffered legitimate, non-discriminatory

reason for terminating Plaintiff's employment—namely, that he engaged in sexual misconduct based on the events of December 12, 2014, in Genoa. Accordingly, for the reasons outlined above, Plaintiff has failed to create a genuine issue of material fact that would allow his Title VII claim to move forward and, therefore, summary judgment on this claim is granted in favor of Defendants.

### B. Section 1983 Claims

In Counts II and III, Plaintiff alleges Section 1983 claims against Defendants on the basis that they violated (1) his Fourteenth Amendment rights to procedural due process, and (2) his equal protection rights.

Section 1983 "provides every person with the right to sue those acting under color of state law for violations of federal constitutional and statutory provisions." *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1299 (11th Cir. 2007) (citing 42 U.S.C. § 1983). However, section 1983 does not create substantive federal rights; it acts merely as a vehicle to bring particular suits. *See Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir. 1996). The Eleventh Circuit has held that "[i]n order to prevail in a civil rights action under section 1983, 'a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law.'" *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996-97 (11th Cir. 1990) (quoting *Dollar v. Haralson County*, 704 F.2d 1540, 1542-43 (11th Cir. 1983), *cert. denied,* 464 U.S. 963 (1983)) (citations omitted).

For the purposes of the summary judgment motion, the Court will assume that the individual Defendants—all employees of a public university—were acting under color of state law. Thus, to succeed on his 1983 claims, Plaintiff must create a genuine dispute

as to a material issue of fact regarding whether he was deprived of a constitutional right: namely, his right to procedural due process or his right to equal protection.  Each of these claims is discussed in turn below.

### 1. Due Process Claim Against Schriner

In Count II, Plaintiff alleges a violation of his Fourteenth Amendment rights to procedural due process.  Plaintiff argues that Defendants deprived him of his property interest in his tenured employment at FIU without due process of law because he was not provided: (1) adequate notice of the reasons for his termination, (2) the names of adverse witnesses and the nature of their testimony; (3) a meaningful opportunity to be heard; and (4) the right to a hearing.

"In reviewing a decision of a public institution to discharge [a tenured] employee, this Court applies a two-tier level of inquiry: '[1] whether the procedures followed by school authorities comported with due process requirements, and if so, [2] whether the action taken is supported by substantial evidence.'" *Laskar v. Peterson*, 771 F.3d 1291, 1297 (11th Cir. 2014) (quoting *Martin v. Guillot,* 875 F.2d 839, 844 (11th Cir. 1989)).

"Tenured college professors and college professors terminated mid-contract have interests in their continued employment that are safeguarded by due process." *Laskar*, 771 F.3d at 1297 (citing *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 576-77 (1972).  Where a professor to be terminated for cause opposes his termination, due process requires that the professor be given "(1) notice of the reasons for dismissal; (2) notice of the names of adverse witnesses and the nature of their testimony; (3) a meaningful opportunity to be heard; and (4) the right to be heard by a tribunal which possesses some academic expertise and an apparent impartiality toward the charges

leveled against the teacher." *Laskar*, 771 F.3d at 1297 (quoting *Holley*, 755 F.2d at 1497). Moreover, the Supreme Court has held that the "essential requirements of due process" are notice and a pre-termination opportunity to respond. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

A recent Eleventh Circuit case is particularly instructive here. In *Jolibois v. Fla. Int'l Univ. Bd. of Trustees*, 654 F. App'x 461 (2016), the court affirmed Chief Judge Moore's grant of summary judgment for defendant FIU on the plaintiff's Title VII and Section 1983 due process claims. In *Jolibois*, the plaintiff, a tenured professor, argued—as Plaintiff does here—that he was not afforded adequate due process before he was terminated by FIU because he was not given a full evidentiary hearing. *Id.* at 466. The court disagreed and held that the "district court did not err in finding that the discipline and termination procedures provided by FIU met minimum procedural due process requirements because the notice of intent to suspend and the notice of intent to terminate gave Jolibois prior notice of the charges against him before the action was taken, notified him of the witnesses, and gave him ten days within which to request a hearing." *Id.* at 466.

The court went on to explain that "[a] full evidentiary hearing is generally not required." *Id.* at 465 (citing *Harrison v. Wille*, 132 F.3d 679, 684 (11th Cir. 1998)). "Instead, '[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'" *Id.* at 465 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). "Requiring any more prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory

employee." *Id.* "Ultimately," the Eleventh Circuit stated, "it is the particular facts in any given case that determine which procedural protections are required." *Id.* at 465 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Here, Plaintiff's due process claim against Schriner fails because the record contains no evidence that Plaintiff was not afforded adequate due process before his termination.   In fact, similar to *Jolibois*, the record shows that FIU and Schriner met minimum procedural due process requirements because: (1) the notice of intent to terminate gave Plaintiff "prior notice of the charges against him before the action was taken, notified him of the witnesses," and gave him ten days within which to respond or request a hearing; (2) FIU and Schriner complied with all of the terms of the collective bargaining agreement to which Plaintiff was a party; (3) Plaintiff does not allege in his operative complaint, nor is there any evidence in the record, that he requested a hearing prior to or after his termination;[8] and (4) FIU and Schriner advised Plaintiff of his rights to appeal at each stage of the investigation.   *See Jolibois*, 654 F. App'x at 466.

Having established that Plaintiff was afforded adequate procedural due process before his termination, the Court also finds that FIU's termination of Plaintiff's employment is supported by substantial evidence.  *Laskar*, 771 F.3d at 1297.  As outlined in Section I above, McWhorter, as the Title IX investigator, conducted an investigation over the course of nearly seven months, interviewed at least ten witnesses, and provided Plaintiff with a report in July 2015 outlining the allegations against him, the relevant witness testimony,

---

[8] Neither Plaintiff's July 16, 2015 letter appealing McWhorter's report regarding Rivera's Title IX complaint against Plaintiff (Pl. Dep. Ex. 19.), nor his September 30, 2015 letter appealing McWhorter's report regarding Plaintiff's Title IX complaint against Rivera (Pl. Dep. Ex. 27), request or mention a hearing. Although it occurred after his termination, Plaintiff's grievance filed pursuant to the collective bargaining agreement which alleged that he was terminated without just cause also does not mention or request a hearing.  (Pl. Dep. Ex. 29).  Finally, Plaintiff's EEOC charge of discrimination dated July 6, 2016 does not mention or request a hearing.  (Pl. Dep. Ex. 33).

and the findings and conclusions.  The evidence and testimony in the record before this Court demonstrates that there was substantial, if not overwhelming, evidence that Plaintiff had violated FIU's policies because of his sexual misconduct.  Under the relevant FIU policy to which Plaintiff was subject, FIU's termination of Plaintiff's employment was a valid response to the investigation's findings, which are outlined in McWhorter's investigative report.

Accordingly, because there is no genuine issue of material fact as to whether Plaintiff was afforded adequate procedural due process before he was terminated, or whether FIU's decision to terminate Plaintiff's employment is supported by substantial evidence, summary judgment is granted in favor of Defendants on this claim.  *Laskar*, 771 F.3d at 1297.

### 2. Equal Protection Claim Against McWhorter, Hardrick, and Schriner

Count III of Plaintiff's third amended complaint is a Section 1983 equal protection claim against McWhorter, Hardrick, and Schriner.  The Eleventh Circuit has held that in cases "alleging disparate treatment, in which § 1983 is employed as a remedy for the same conduct attacked under Title VII, "'the elements of the two causes of action are the same.'"  *Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805 (11th Cir. 1995) (quoting *Cross v. State of Ala.*, 49 F.3d 1490, 1508 (11th Cir. 1995)).

Thus, to show an equal protection violation, Plaintiff needs to show that he was treated differently than persons similarly situated and "that the defendants acted with the intent to discriminate," based on a constitutionally protected interest.  *Radford v. Smith*, 2005 WL 2237603, at *1 (S.D. Ga. Aug. 15, 2005) (citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *E & T Realty v. Strickland*, 830 F.2d 1107, 1112-13 (11th Cir. 1987));

*see also Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (holding that to plead an equal protection claim a plaintiff must allege that "(1) he is similarly situated with other [persons] who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest, such as race") (internal quotation marks and citation omitted).

Here, Plaintiff has presented no record evidence that Defendants acted with intent to discriminate against him on the basis of his sex.  FIU and the individual Defendants have pointed to numerous pieces of evidence in the record to demonstrate that the proffered reason for Plaintiff's termination—that he had engaged in sexual misconduct with an incapacitated student—is not a pretext for any discriminatory motive.  Plaintiff has also failed to point to any valid comparators.  As discussed at length above regarding Plaintiff's Title VII claim, the record is devoid of any evidence that Plaintiff was similarly situated with other individuals outside of his protected class who received more favorable treatment, as is required to survive at the summary judgment stage under Eleventh Circuit precedent.  *See, e.g., Jones*, 279 F.3d at 946-47.  Thus, Plaintiff has failed to adduce evidence demonstrating that he was deprived of his equal protection rights under the Constitution.  Because Plaintiff has failed to create a genuine issue of material fact as to either element of a Section 1983 equal protection claim, summary judgment is granted in favor of Defendants on this claim.

## IV.    CONCLUSION

For the reasons stated above, it is **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment (DE 70) is **GRANTED.**  The Court will enter final judgment separately pursuant to Rule 58 of the Federal Rules of Civil Procedure.  All deadlines and

hearings are **CANCELED**.  All pending motions are **DENIED AS MOOT** and the Clerk is directed to **CLOSE** this case.

　　　　**DONE AND ORDERED** in chambers in Miami, Florida, this 16th day of January, 2019.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE